### STATE v. TEXAS & P. RY. CO.

(Court of Civil Appeals of Texas. El Paso. Jan. 4, 1912. Rehearing Pending.)

1. CONSTITUTIONAL LAW (§ 241*) — RAILROADS (§ 226*)—EQUAL PROTECTION OF THE LAWS—STATUTES.

Acts 31st Leg. c. 96, compelling railroad corporations to maintain water-closets at passenger stations, is not invalid as denying to railroad corporations the equal protection of the laws, because it does not apply to individuals, copartnerships, associations, and trustees, since, as a practical matter, railroads are owned and operated by corporations, and the Legislature may deal with practical conditions.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 241;* Railroads, Cent. Dig. § 740; Dec. Dig. § 226.*]

2. CONSTITUTIONAL LAW (§ 212*) — POLICE POWER—EQUAL PROTECTION OF THE LAWS.

The Legislature in the exercise of its police power may single out occupations and individuals and impose on them additional burdens for the peace, good order, morals, or health of the community, and, so long as the classification made by the act is reasonable, the act is not in conflict with Const. U. S. Amend. 14, requiring the equal protection of the law, provided the act operates equally on all within the class.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 684, 705; Dec. Dig. § 212.*]

**3. RAILROADS (§ 224*)—REGULATION—STATUTES—CONSTRUCTION.**

Acts 31st Leg. c. 96, compelling railroad corporations to maintain water-closets at passenger stations, cannot be construed to apply to receivers operating railroads.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 734–737; Dec. Dig. § 224.*]

**4. RAILROADS (§ 226*)—PENAL STATUTES—CONSTRUCTION.**

Acts 31st Leg. c. 96, requiring railroad corporations to maintain water-closets at stations under penalties stated for failure so to do, is a penal statute, and the rules governing the construction of penal statutes are applicable.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 226.*]

**5. CONSTITUTIONAL LAW (§ 210*) — EQUAL PROTECTION OF THE LAWS—"PERSON."**

A corporation is a "person" within the equal protection clause of Const. U. S. Amend. 14.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 679, 680; Dec. Dig. § 210.*

For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

**6. CONSTITUTIONAL LAW (§ 241*) — EQUAL PROTECTION OF THE LAWS—REGULATION OF RAILROADS.**

Acts 31st Leg. c. 96, compelling railroad corporations to maintain water-closets at passenger stations, though not applying to receivers operating railroads, is not invalid as denying to railroad corporations the equal protection of the laws, because the act creates a class, and treats all within the class alike.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 700, 701; Dec. Dig. § 241.*]

**7. CONSTITUTIONAL LAW (§ 297*)—DUE PROCESS OF LAW.**

Acts 31st Leg. c. 96, requiring each railroad corporation operating a line of railroad in the state, for the transportation of passengers, to construct and maintain and keep in a reasonably sanitary condition, suitable water-closets at each passenger station, is not so indefinite and uncertain as to be incapable of being practically obeyed, so as to deprive railroad corporations of their property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 832–834; Dec. Dig. § 297.*]

**8. CONSTITUTIONAL LAW (§ 248*) — EQUAL PROTECTION OF THE LAWS.**

Acts 31st Leg. c. 96, requiring railroad corporations to erect and maintain water-closets at passenger stations, does not deny to railroad corporations the equal protection of the laws merely because it makes them liable for costs in civil or criminal prosecutions, while it exempts the state from such liability, since the proviso exempting the state from liability for costs adds nothing to the effect of the act; the state not being liable for costs even aside from the provision.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 703; Dec. Dig. § 248.*]

Appeal from District Court, Howard County; James I. Shepherd, Judge.

Action by the State against the Texas & Pacific Railway Company. From a judgment of dismissal, plaintiff appeals. Reversed and remanded.

H. R. Debenport and R. N. Grisham, for the State. Douthit & Smith, for appellee.

HIGGINS, J. The state of Texas, by the county attorney of Howard county, filed suit in the district court of said county against the appellee, a railroad corporation, to recover penalties in the sum of $1,950 for alleged failure to keep well-lighted existing water-closets at its depot in town of Coahoma, a station upon its line of railroad, where passengers were received and discharged during the nighttime. Special exceptions to the petition were sustained and the suit dismissed. The questions presented by this appeal involve the constitutionality of chapter 96, p. 175, Acts 31st Leg., commonly known as the "Water-Closet Law," and upon which this suit is based.

The constitutionality of the act is attacked upon three grounds, viz.:

First. Because it violates the fourteenth amendment to the federal Constitution in denying to railroad corporations equal protection of the law, in that it applies to railway corporations only, and does not apply to individuals, copartnerships, receivers, trustees, or associations that are or might be performing identically the same character of service, with the same kind of instrumentalities, under identically the same general conditions, there being no reasonable basis for the classification and imposition of the duties and penalties imposed by the act upon railroad corporations only; that such classification was purely arbitrary and beyond the power of the Legislature.

Second. Because it violates said federal amendment and section 19 of the Bill of Rights of the state Constitution, in that the act is penal in its nature, and is so vague, indefinite, and uncertain in its terms as to be incapable of practical enforcement, giving the corporations affected thereby no information in advance by which they can regulate their conduct, thus depriving them of their property without due process of law.

Third. The act further violates the equal protection clause of the fourteenth amendment of the federal Constitution and section 13 of the Bill of Rights of the state because railroad corporations are liable for costs incident to prosecutions under the act, whereas the state is expressly exempted from liability therefor.

We will consider the objections to the statute in the order stated above.

Counsel for appellee urge with great ability, and support their position with high authority, that the singling out of railroad corporations by the act and imposing penalties upon them is not a reasonable, but an arbitrary, classification, and therefore not permissible.

[1] The objection that the law does not apply to individuals, copartnerships, associations, and trustees partakes rather of the abstruse and is hypercritical in its nature, because as a practical matter railroads are

not so-owned and operated, and the Legislature deals with practical rather than possible or remotely conceivable conditions, but it is true that receivers do frequently operate railroads, and to this court it appears that the failure to include them within the scope of the act dangerously approaches an arbitrary classification without any reasonable basis. That the act does not operate against receivers is clear. Campbell v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878.

[2] While the fourteenth amendment guarantees to all the equal protection of the law, yet in the exercise of the "police power" a Legislature, subject to certain limitations, may single out occupations and individuals and impose additional burdens, on the theory that what is done, although it unequally affects part of the community, is for the general peace, good order, morals, or health of the whole community, and it is not within the scope of the amendment to withhold from the states the power of classification, if the law deals alike with all of a certain class. This general power of classification is asserted in Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107, in this language: "When legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the law, if all persons brought under its influence are treated alike under the same conditions." Under this general statement of the rule, it would seem that in exercising the police power the state is practically vested with an unrestrained power of classification, but the authority of the state to single out individuals and classify pursuits and occupations is subject to an important limitation which is made clear by the same court in Railway Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, wherein it expressly holds: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and in all cases it must appear, not only that a classification has been made, but also that it is one based upon some reasonable ground —some difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection." And in the same case it is further said: "While good faith and a knowledge of existing conditions on the part of a Legislature are to be presumed, yet to carry that presumption to the extent of always holding that there must be some undisclosed and unknown reason for subjecting certain individuals or corporations to hostile and discriminating legislation is to make the protecting clauses of the fourteenth amendment a mere rope of sand in no manner restraining state action." We believe, however, the best statement of the true rule is by the Supreme Court of Indiana in Bedford Quarries Co. v. Bough, 168 Ind. 671, 80 N. E. 529, 14 L.

143 S.W.—15

R. A. (N. S.) 418, as follows: "It has been sometimes loosely stated that special legislation is not class if all persons brought under its influence are treated alike under the same conditions. But this is only one-half the truth. Not only must it treat alike, under the same conditions, all who are brought within its influence, but in its classification it must bring within its influence all who are under the same conditions. * * * Such legislation must not only operate equally upon all within the class, but the classification must furnish a reason for and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter and rest upon some reason which is natural and substantial, and not artificial. Not only must the classification treat all brought under its influence alike under the same conditions, but it must embrace all of the class to which it is naturally related. Neither mere isolation or arbitrary selection is proper classification." The rule as stated in the Ellis Case, supra, was applied by the Court of Civil Appeals of the First District in an able opinion by Judge Reese, holding unconstitutional a statute which required electric street railways and receivers to protect the forward ends of its cars with a screen or vestibule. They held that it was an arbitrary classification, and did not bring within the scope of its influence all those who might be operating street railways—i. e., individuals, partnerships, and associations—and the statute therefore violated the equal protection clause of the fourteenth amendment. Beaumont Traction Co. v. State, 122 S. W. 615. This case, however, was not passed upon by the Supreme Court of our state.

[3] The statute now under consideration cannot be construed as applying to receivers operating railroads. Campbell v. Cook, supra.

[4, 5] It is clear, too, that it is penal in its nature and the rules of construction in such cases are applicable; also, that a corporation is a "person" within the meaning of the equal protection clause.

[6, 7] While the Legislature is vested with a very wide discretion in exercising its power of classification, yet this court is of the opinion that its power is undoubtedly subject to the limitation stated in the Ellis Case, otherwise it would follow that in the exercise of the police power the state would be wholly unrestrained by the fourteenth amendment, and we would be disposed to hold that the act in question violates the equal protection clause thereof because it is an arbitrary classification as against railroad corporations, in that it does not bring within the scope of its influence all those who are under the same conditions, and there is no difference between railroad corporations and receivers thereof which bears a reasonable, just, and proper relation to the classification made. That it would have been competent for the Legislature to have made

the act apply to receivers of railroads is clear. However, we do not feel ourselves at liberty to so hold in view of the decisions of our own Supreme Court, which, so far as we are advised, have uniformly applied the rule stated in the Mackey Case which practically confers upon the Legislature an unrestrained power of classification in exercising the police power. Campbell v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878; Supreme Lodge, etc., v. Johnson, 98 Tex. 1, 87 S. W. 18; Insurance Co. v. Chowning, 86 Tex. 654, 26 S. W. 982, 24 L. R. A. 504.

The fellow servant act of 1891 (Acts 22d Leg. c. 24), which was under consideration in Campbell v. Cook, supra, did not bring within the scope of its influence receivers of railroads, but no point seems to have been made as to that; and that question was therefore not passed upon. It was there urged that the law denied to railway corporations equal protection because it did not apply to other corporations. This position was overruled, the court basing its decision upon the Mackey Case. In Insurance Co. v. Chowning and Supreme Lodge, etc., v. Johnson, supra, it was urged that the laws under consideration did not treat all insurance companies alike and the contention again overruled upon the broad doctrine of the Mackey Case, but in the three cases last mentioned it may be said that there was some reasonable basis for the classification. In Railway Co. v. Richardson, 125 S. W. 623, the validity of a section of the Oklahoma state Constitution was attacked, the precise question now under consideration being involved. Judge Rainey said: "The contention by appellant is that section 36, art. 9, of the Constitution of Oklahoma, violates the first section of the fourteenth amendment to the Constitution of the United States, in that it does not grant to all persons equal protection; that it applies to the employés of railroad companies, and not to the employés of individuals, partnerships, joint-stock associations, nor receivers that may be engaged in the same business as the railroad companies; that it applies to the employés of railroad corporations generally and is not restricted to those employés engaged in the performance of dangerous work and exposed to the dangers of work peculiar to railroads; and that it applies to the employés of railroad companies, and their status is fixed, not by the character of work performed, but by the character of the employer. We are of the opinion that section 36 of the Oklahoma Constitution is not obnoxious to the fourteenth amendment of the Constitution of the United States, and the objections urged are not tenable. The principle that controls, in this case, is announced by our Supreme Court in Campbell v. Cook, where Mr. Chief Justice Gaines, speaking for the court, says: 'This law applies equally to each and every railroad doing business in the state, and in no respect does it discriminate against any particular railroad company.' 'When legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the law, if all persons brought under its influence are treated alike under the same conditions.' " A writ of error was refused by the Supreme Court, from which refusal it necessarily follows that decision of Judge Rainey upon that particular question was approved. Judge Rainey based his holding upon Campbell v. Cook and the Mackey Case. The water-closet act of 1905 (Acts 29th Leg. 133) was identical with the present one in so far as concerns the constitutional questions now considered, and a review of the decisions thereunder leads to the irresistible conclusion that our Supreme Court has passed adversely upon the first two contentions of appellee.

In M., K. & T. Ry. Co. v. State, 97 S. W. 720, Judge Bookhout expressly held that the act did not violate the equal protection clause of the Constitution, nor was it so vague and indefinite in its requirements as to render it invalid. Upon writ of error to Supreme Court (Ry. Co. v. State, 100 Tex. 420, 100 S. W. 761), these same objections were urged, but the act was there held invalid as violative of the due process clause of the Constitution, because it gave the company an insufficient time to construct closets, and the court stated that it was unnecessary to pass upon the other questions presented. In H. & T. C. Ry. Co. v. State, 103 S. W. 449, there was a judgment in favor of the state for failing to keep an existing closet in a clean and sanitary condition, and Judge Fisher said: "There are several constitutional objections urged to this statute, which in the main were passed upon by the Court of Civil Appeals in the case of M., K. & T. Ry. Co. v. State, 97 S. W. 720, where it was held that the law did not violate the provisions of the state and federal Constitutions pointed out; and, as applied to the facts of this case, we have not been able to find any constitutional objection to the statute." From the review which we have made of the case referred to by Judge Fisher, it will be noted that the constitutional objections referred to were those presented by the first and second propositions of appellee herein. Judge Fisher then discussed the decision of the Supreme Court in M., K. & T. R. Co. v. State, 100 Tex. 420, 100 S. W. 766, and pointed out the uncertainty of the exact scope thereof, and held that the same was not to be construed as holding the law invalid as to existing closets. In view, however, of the uncertainty of the correctness of his interpretation, the court thereupon certified the case to the Supreme Court, presenting in different forms the same question. The questions submitted being substantially: First. Was their construction of the decision correct? Second. Was the entire act unconstitutional for the reason stated by the Supreme Court in the opinion referred to?

In other words, can it be enforced for failure to keep an existing closet in a proper and sanitary condition and properly lighted?

Answering the questions (Houston & T. C. R. Co. v. State, 101 Tex. 333, 107 S. W. 525), the Supreme Court said: "In the case of the Missouri, Kansas & Texas Ry. Co. v. State of Texas, 100 Tex. 420 [100 S. W. 766], we held that by reason of the fact that the act did not prescribe a time in which the water-closets should be constructed, and did not allow a reasonable time for doing the work, so much of the act as denounced a penalty for a failure to provide such structures was inoperative and void. The decision was clearly limited to this question, and that was all that was decided. The reason for that holding was that it would require some considerable time to construct the water-closets, and, since a reasonable time was not allowed for doing the work, the act was invalid. This reason does not apply where the railroad already has closets in existence, and the question is as to the failure to keep them clean or to light them. No reason is seen why a water-closet could not be made clean and lighted at once. It follows that we are of the opinion that the entire act is not unconstitutional, and that it can be enforced for a failure to keep an existing closet in a proper sanitary condition and properly lighted." It thus clearly appears that the Supreme Court held the act not subject to the first and second objections here urged. Again, the act of 1905 was before the Austin Court of Civil Appeals in S. A. & A. P. Ry. Co. v. State, 55 Tex. Civ. App. 452, 120 S. W. 1077, and Judge Key said: "Except in one respect, this case is quite similar to Houston & T. C. Railroad Co. v. State, 103 S. W. 449, and 101 Tex. 333 [107 S. W. 525], decided by this court and by the Supreme Court. It was there held that the water-closet statute enacted by the Twenty-Ninth Legislature, in so far as it related to maintaining water-closets and keeping them lighted at nighttime, was not unconstitutional, and could be enforced." The judgment for penalties was affirmed and a writ of error refused by Supreme Court. The same court reaffirmed this decision in H. & T. C. Ry. Co. v. State, 120 S. W. 1078. See, also, decision by Texarkana court in State v. T. & N. O. Ry. Co., 125 S. W. 53. The only decision of our courts which is contrary to the above-cited cases is by Judge James in State v. T. & N. O. Ry. Co., 103 S. W. 653, in which he upholds the second contention of appellee. If it were presented to us as an original proposition, we would not be disposed to uphold this second contention, but appellee's first proposition appeals most forcibly to us.

In view of the decisions of our own courts reviewed above, we hold the act in question is not subject to objections stated in appellee's first and second propositions.

[8] The third position of appellee is untenable. The state is not liable for costs in prosecutions, civil or criminal. This exemption, whether it be called prerogative or privilege, is founded upon the sovereign character of the state, amenable to no judicial tribunal, subject to no process. Under the common law of England, the king neither paid nor received costs and upon the revolution the commonwealth stood in the place of the king, and was therefore not liable for costs, except when so directed by the Legislature. The rule above stated was announced by Supreme Court of Pennsylvania in Commonwealth v. Commissioners of Philadelphia, 8 Serg. & R. (Pa.) *153. The same principle is recognized by United States Supreme Court in United States v. Hooe, 3 Cranch, 92, 2 L. Ed. 370; In re The Antelope, 12 Wheat. 549, 6 L. Ed. 723; United States v. Barker, 2 Wheat. 395, 4 L. Ed. 271. As to the officers of the state, the law expressly fixes their compensation and annual appropriations are made by the Legislature to pay same. In re The Antelope, supra. The provision of the act which expressly exempts the state from liability for costs adds nothing to the effect of the act. Such would have been the legal effect thereof had it been entirely omitted. There are many suits which may be instituted in name of the state by county and district attorneys for which there is no general provision providing for the payment of the costs incurred by the state. If annual legislative appropriations were not made, they could not be collected, so as a matter of fact the payment thereof is a matter of legislative grace.

Such being the case, the contention of appellee, if carried to its logical conclusion, would render invalid any act authorizing suits by the state, unless at the same time provision was made for the payment of the costs incurred by the state.

Reversed and remanded.