### FREEMAN v. SWAN.†

(Court of Civil Appeals of Texas. El Paso. Jan. 18, 1912. Rehearing Denied Feb. 7, 1912.)

1. MASTER AND SERVANT (§ 285*)—INJURIES —JURY QUESTION—EXISTENCE OF DEFECTS.

Evidence, in a switchman's action for personal injuries by having his foot caught between the couplings while coupling cars, *held* to make it a jury question whether the coupling could have slid out of place by gravity, by reason of one end of the carrying iron being defective.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 285.*]

2. APPEAL AND ERROR (§ 1002*)—FINDINGS —CONFLICTING EVIDENCE.

The Court of Civil Appeals has no power to disturb findings of fact made on conflicting evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

3. CONSTITUTIONAL LAW (§ 245*) — EQUAL PROTECTION OF LAW—EMPLOYER'S LIABILITY ACT.

The safety appliance act (Acts 31st Leg. c. 26), which required all cars used in intrastate traffic to be equipped with automatic couplers, and providing that no employé of a common carrier who may be injured shall be held to assume all risks of his employment, or to have been guilty of contributory negligence, if the carrier's violation of any provision of the act contributed to the injury, does not contravene Const. U. S. Amend. 14, relating to equal protection of law.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 245.*]

4. CONSTITUTIONAL LAW (§ 245*) — EQUAL PROTECTION OF LAW—EMPLOYER'S LIABILITY ACT.

The employer's liability act (Acts 31st Leg. [1st Ex. Sess.] c. 10) provides that, in an action against a common carrier by an employé, the employé shall not be held guilty of contributory negligence where the violation by the carrier of any statute enacted for the safety of employés contributed to the death of such employé. *Held*, that the statute did not violate Const. U. S. Amend. 14, relating to the equal protection of the law.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 245.*]

5. MASTER AND SERVANT (§ 14*) — MASTER'S LIABILITY—CONSTITUTIONALITY OF STATUTES—ABOLISHING CONTRIBUTORY NEGLIGENCE.

The Legislature had power to enact the safety appliance act (Acts 31st Leg. c. 26), providing that no employé of a common carrier shall be held guilty of contributory negligence if the carrier's violation of any provision of the act contributed to the employé's injury, as well as the employer's liability act (Acts 31st Leg. [1st Ex. Sess.] c. 10), providing that no employé shall be held guilty of contributory negligence where the violation by a common carrier of a statute enacted for the safety of employés contributed to such employé's death.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 14.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

**6. MASTER AND SERVANT (§ 14*) — MASTER'S LIABILITY—CONSTITUTIONALITY OF STATUTES—ASSUMPTION OF RISK.**

The Legislature had power to enact the safety appliance act (Acts 31st Leg. c. 26), providing that any employé of a common carrier shall not be held to assume the risk of his employment if the carrier's violation of any provision of the act contributed to his injury, as well as to enact the employer's liability act (Acts 31st Leg. [1st Ex. Sess.] c. 10), abolishing the defense of assumed risk where the carrier's violation of a statute enacted for the safety of the employé contributed to the injury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 14.*]

**7. COMMERCE (§ 10*)—MASTER'S LIABILITY—CARRIERS—APPLICATION OF STATUTES.**

A state statute regulating the relation of common carriers to their employés is applicable to interstate commerce until Congress has acted upon the same subject.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 8; Dec. Dig. § 10.*]

**8. STATUTES (§ 64*)—INVALIDITY IN PART.**

A statute will be sustained as to those parts not clearly unconstitutional, unless the constitutional and unconstitutional parts are so commingled that they cannot be separated.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. § 64.*]

**9. MASTER AND SERVANT (§ 129*)—INJURIES —PROXIMATE CAUSE.**

That a switchman, injured in coupling a car, saw the defect before he was injured would not prevent it from being the proximate cause of his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

**10. MASTER AND SERVANT (§ 285*)—INJURIES —JURY QUESTION—PROXIMATE CAUSE.**

Whether the proximate cause of injury to a switchman in coupling cars was a defect in the coupling, by which bars would not meet, or the switchman's act in putting his foot against the coupling to push it in line, *held* a jury question.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 285.*]

**11. NEGLIGENCE (§ 61*)—PROXIMATE CAUSE.**

If an accident results from two causes, due to the negligence of different persons, but together the efficient cause of the accident, both are liable.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 74, 75; Dec. Dig. § 61.*]

**12. MASTER AND SERVANT (§ 228*)—INJURIES —PROXIMATE CAUSE.**

If a switchman whose foot was injured in coupling cars was injured by the combined negligence of the company in permitting a defective coupling and of himself in putting his foot between the coupling, the company would be liable in damages for its negligence; the statute preventing plaintiff's negligence from barring a recovery.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 228.*]

**13. NEGLIGENCE (§ 140*) — INSTRUCTIONS — "PROXIMATE CAUSE"—DEFINITIONS.**

The court charged, in an action for personal injuries, that the "proximate cause" of an injury was a cause without which it would not have happened, and which, in a natural and continuous sequence, produces an injury; and, in order to find that negligence is the proximate cause of an injury, it must appear that it was the natural and probable consequence of the negligence, and should have been foreseen as a result likely to occur in the light of the attending circumstances. *Held*, that the charge sufficiently defined proximate cause.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 378–381; Dec. Dig. § 140.*

For other definitions, see Words and Phrases, vol. 6, pp. 5758–5769; vol. 8, p. 7771.]

Appeal from District Court, Harris County; E. R. Campbell, Special Judge.

Action by Charles E. Swan against T. J. Freeman, receiver. From a judgment for plaintiff, defendant appeals. Affirmed.

Wilson, Dabney & Meachum and John M. King, for appellant. John W. Parker, for appellee.

PETICOLAS, C. J. This was a personal injury suit in which the appellee, while engaged in coupling cars, was injured.

The facts immediately attendant upon the injury were as follows: In its yards in the city of Houston, the International & Great Northern Railroad has a track which runs between a freighthouse platform and another freight platform on the opposite side of the track. On the night of the injury, the appellee was one of a switching crew who were endeavoring to couple onto an M., K. & T. car, which stood on this track. The approaching car was a Wabash car, and both were equipped with automatic couplers. It appears that on the night of the injury the appellee adjusted the knuckle on the M., K. & T. car, and then got back on the platform. When the cars came together, they did not couple. An attempt was thus made to couple the cars about three times, but unsuccessfully; Swan, the appellee, testifying that he would push the drawhead over each time, and that it would slide back of its own volition. Just prior to the last attempt to couple, at which Swan was injured, he got down with his lantern and looked underneath the M., K. & T. car, and found that a nut was off or out of place, the result of which, he said, was to cause the carrying iron to hang lower at that end, which resulted in causing the drawhead to slide out of line. A brief description of this automatic coupler is, for clarity, perhaps necessary. The coupler itself, which contains the knuckle, is attached to the car by what is known as a "drawbar." Just across the front end of the car, close down to the drawbar, runs a timber, which is generally called the "deadwood." Four bolts run perpendicularly through the ends of the deadwood, two at each end. These carry an iron, called the "carrying iron," which might be described as a shallow stirrup, and this stirrup, in turn, carries the drawbar, and thus the coupler. These automatic couplers have a lateral play and also a longitudinal play against a spring, and Swan testified that when he found the coupling would not make he pushed the coupler on M., K. & T. car

over as far as he could, in order to facilitate the coupling; that the nut mentioned being gone from one of the bolts supporting one end of the carrying iron, it allowed it to drop down about 1½ or 2 inches, and that was the reason why the coupler would not stay over, but would of itself slide back, and thus prevent the coupling; that on his last attempt he put his foot on the coupler, intending to hold it over in position, so that when the cars came together the coupling would make. At about the moment of impact, he claims that his other foot upon the ground slipped, and the foot on the coupler was caught between them and severely injured. The testimony also showed that on one of the platforms spoken of the railroad kept a water barrel, which was used by the employés as a place to wash, and was standing under a faucet, and that more or less water from the overflow of said water barrel and from the fact that it was emptied from time to time accumulated on the tracks at this point. He alleged that this water had flowed down to where he was making the coupling, and caused the ground to become slippery, and caused him to slip.

The suit was brought under the state safety appliance act (Acts 31st Leg. c. 26) and employer's liability act of 1909 (Acts 31st Leg. [1st Ex. Sess.] c. 10); the missing nut being relied upon as a defect in the coupling appliance. The slippery condition of the ground, caused by the water, as aforesaid, was also relied upon as negligence.

The safety appliance act of 1909, after providing that common carriers shall not use cars employed in moving intrastate traffic not equipped with couplers coupling automatically by impact, provides: "That any employee of any common carrier * * * who may be injured or killed shall not be held to assume the risk of his employment or to have been guilty of contributory negligence if the violation of such carrier of any provision of this act contributed to the injury or death of such employee." The employer's liability act provides: "In any action brought against any common carrier * * * the employee shall not be held to assume the risk of his employment in any case where the violation of such common carrier of any statute enacted for the safety of the employee contributed to the injury or death of such employee." The employer's liability act also provided that no employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the death of such employé.

It will thus be seen that under these statutes, if the violation of the carrier of any provision of the safety appliance act contributed to the injury or death of the employé, neither assumed risk nor contributory negligence could be used as a defense; but

if the injury or death was caused by some negligence, not a violation of the safety appliance act, then, if the employé should be guilty of contributory negligence, the damages should be diminished by the jury in proportion to the amount of negligence attributable to such employé. The trial court instructed that the defendant's pleas of assumed risk and contributory negligence were not available to the defendant as defenses to plaintiff's action, except to the extent to which he limited them in the charge. He defined negligence, contributory negligence, and proximate cause, and instructed the jury that if they believed the coupler on the stationary car was in a defective condition, due to negligence of defendant, so that it would not couple automatically by impact, and believed that it was necessary for the plaintiff to go between the ends of the cars to make the coupling, and that in doing it, and in the manner of doing it, he was in the performance of his duty as a switchman, and was injured substantially at the time, place, and manner alleged by him, this hauling or using the car with the coupler in such condition was a violation of the state act requiring cars to be equipped with automatic couplers coupling by impact, was negligence as a matter of law, and if they believed that such negligence, if any, was the proximate cause, in whole or in part, of the injury of plaintiff that they would find for the plaintiff. He then submitted the slippery roadbed to the jury for them to determine whether it was negligence, and whether his foot slipped, as alleged by him; and that if such negligence, if any, was a proximate cause of the injury of plaintiff they would find for the plaintiff. He also submitted to them that, if they believed both of these things were negligence which combined and concurred as a proximate cause, they would find for the plaintiff. He submitted the converse of these things for the defendant, and with regard to the measure of damages he instructed them, in effect, that if they found the defect in the coupler was the proximate cause of the injury they would allow him such sum of money as paid now would compensate him, etc.; but if they did not believe that the defect in the coupler was the proximate cause of the injury, and based their verdict upon the defendant's negligence, if any, in regard to the slippery condition of the track, and believed that was the sole cause of the injury, then they would diminish plaintiff's damages in proportion to the amount of contributory negligence attributable to plaintiff, and fully instructed them in this connection that if they believed a person of ordinary prudence would not have gone between the cars, or that it was not necessary for plaintiff to go between the cars, or that it was not his duty to do so, or that he should not have undertaken to make the coupling under the circumstances, or in the manner he did, or he could have

made the coupling in another way without injury, or that a person of ordinary care would not have used his foot in attempting to make the coupling, or believed the defendant had a rule which forbade the use of the feet in making such couplings, or believed he was negligent in any other manner contributing to his injury, then and in either event plaintiff was guilty of contributory negligence, and they would diminish his damages, as stated above.

There are 66 assignments of error relied upon by the appellant, but most of them are covered by three main contentions. It is contended, first, that the facts adduced by the defendant tending to show that there was no defect in the automatic coupler, and that the water from the water barrel could not flow down to the place of the accident, are so strong as to require this court to reverse the case upon the facts. Second. That, inasmuch as plaintiff saw the defect before he was hurt, as a matter of law, it could not be a proximate cause. Third. That the safety appliance acts and the employer's liability law of 1909 are unconstitutional, in that they are violative of the fourteenth amendment, and in that it is beyond the power of a legislature to enact a law withdrawing absolutely the defense of contributory negligence; that the said statutes are confiscatory, etc.

[1] The first of the contentions made by appellant, as stated above, when enlarged seems to be (a) that, as a mechanical law, a coupler resting upon a carrying iron two inches lower at one end than it was at the other could not slide out of place by gravity, or by reason of the low end of the carrying iron. To this proposition we find ourselves unable to agree. It seems to us that whether gravity would, every time the coupler was pushed to the high side of the carrying iron, pull the coupler back to the low side of the carrying iron depends entirely on the local conditions there present. If the carrying iron was very smooth, and the coupler slid upon it very easily, it would, we think, slide back; on the other hand, if the carrying iron was rough or rusty, it might be that it would not, and whether it would or not is, it seems to us, a question of fact properly determinable by the jury under all the evidence before them.

(b) The defendant made certain tests after the accident with cars having a carrying iron lower at one end than the other, and introduced a large number of witnesses who testified that such coupler would couple on impact. This is not necessarily a showing by said tests that the coupler would not slide to the low side of the carrying iron, or necessarily a finding that it would couple by impact from all positions on said carrying iron. But, however we regard it, it yet remains true that it was an issue of fact properly determinable by the jury; and we do not find any such great weight or

great preponderance of the testimony in favor of the defendant on this subject as would authorize us to disturb the verdict of the jury.

(c) It is contended that tests show that the overflow from the water barrel and water there emanating could not flow down to the place of the accident. Again, this is but an issue of fact, properly determinable by a jury, and not for us to inquire into.

[2] We are not attempting to follow out this evidence in its minutiæ, but only to state enough of its salient points to make intelligible the reasons which lead us to the result we obtain. To illustrate: Swan testified that in each instance, when the coupler was pushed over in preparation for coupling, it would slide back, and therefore would not couple. If we were empowered to presume that the evidence contradicting Swan was necessarily accurate, appellant's contention might follow. On the other hand, we can see that it may very reasonably be contended that Swan's testimony that the coupler would not stay in the proper position is borne out by the fact (which is not controverted) that the coupler would not couple on impact at the time of this accident. It simply reduces itself to this: That conflicting testimony on these subjects was presented to the jury, who found in favor of plaintiff's version of it. Under these circumstances, we are of the opinion that we have no power to disturb this finding; nor, under the testimony, do we feel any inclination so to do.

[3, 4] The third of appellant's contentions, that the statutes above mentioned are unconstitutional, is presented in different forms; but we think that two of the points made substantially cover all the questions so raised. (a) It is contended that such statutes are in violation of the fourteenth amendment, are class legislation, and deny to the appellant that equal protection of the laws guaranteed by the Constitution. (b) It is contended that a state Legislature has no power to pass an act which, under any circumstances, deprives the persons affected of the defenses of assumed risk and contributory negligence.

In the case of the State of Texas, Appellant, v. Texas & Pacific Railway Company, 143 S. W. 223, decided by this court and not yet officially reported, we had occasion to make an exhaustive examination of the constitutionality of a law attacked as violative of the fourteenth amendment. In that case we said: "While the fourteenth amendment guarantees to all the equal protection of the law, yet, in the exercise of the police power, a Legislature, subject to certain limitations, may single out occupations and individuals and impose additional burdens, on the theory that what is done, although it unequally affects part of the community, is for the general peace, good order, morals, or health of the whole community; and it is not within

the scope of the amendment to withhold from the states the power of classification, if the law deals alike with all of a certain class." See, also, Railway Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107. In the case of Bedford Quarries Co. v. Bough, 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418, it is said: "The reason for the classification must inhere in the subject-matter and rest upon some reason which is natural and substantial, and not artificial." In the case of Railway Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, it is said: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and in all cases it must appear, not only that a classification has been made, but also that it is one based upon some reasonable ground, some difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection."

Of recent years, in a great many instances, both state and federal statutes have been enacted, and those statutes have been sustained, controlling and regulating common carriers in their relation of masters to their servants. For instance: The statutes doing away with the fellow servant defense; the federal employer's liability act, doing away with contributory negligence as a complete defense, and leaving it only as a proportionate defense; the federal safety appliance act. These laws are all classifications as against carriers, and have all been sustained, when enacted in proper form, upon the belief that there is a reasonable basis for such classification—a difference inherent, not in the persons affected, but in the subject-matter touched upon, which justifies and authorizes the classification made.

It is apparent that both the state and federal employer's liability acts and the state and federal safety appliance acts are based upon the necessity, which affects the whole community, of reducing and diminishing accidents to employés working with dangerous instrumentalities in the service of common carriers. The reasons for the classification inhere in the subject-matter. The duties required of those protected are to work with dangerous instrumentalities. It is a matter of common knowledge that many accidents follow. Any law, then, which tends to reduce the number of such accidents, which tends to protect human lives and to prevent injuries, in its very nature must be beneficent and of great ultimate good to the people at large. It will not be contended, we suppose, that the inherent danger of the occupations they follow does not furnish a reasonable basis for laws protecting those engaged in such occupations; nor that these conditions do not furnish a reasonable basis for a classification by statute applicable to the subject-matter and, incidentally, operating against those, as masters, conducting

them. This being true, we find no shadow of any doubt that the statutes attacked, as against the objection that they deny the equal protection of the laws to the railroads or to this appellant, are not invalid.

[5, 6] The second objection made seems to us only one of degree. If a constitutional law can be passed by a legislature, denying the fellow servant defense to a defendant, what reason is there for holding that such a law cannot deny the defense of contributory negligence? If it can deny to the carrier the defense of contributory negligence, why can it not deny to the carrier the defense of assumed risk?

In this connection, it will be noted that the statutes mentioned do not deny absolutely the defense of contributory negligence or assumed risk, but deny it only when there is a violation of the statute providing for automatic couplers, thus tending directly to bring about a compliance with that statute.

In this connection, it is of some aid to us to inquire what construction has been put upon these laws, or similar laws, as to whether they require reasonable care of the carrier to equip with the automatic couplers, or whether they absolutely require it. We find two cases reported (Delk v. Railway, 220 U. S. 580, 31 Sup. Ct. 619, 55 L. Ed. 590; C., B. & Q. Ry. Co. v. U. S., 220 U. S. 559, 31 Sup. Ct. 613, 55 L. Ed. 582), in both of which cases the United States Supreme Court, in construing the federal safety appliance act, holds that it absolutely requires of the carriers a compliance with its terms; and that reasonable care to that end is not sufficient. These cases are illustrative of the purpose of the law to absolutely require compliance with it, and are indicative that such absolute requirements may validly be made. If it is within the power of Congress to do away with reasonable care as an excuse for noncompliance with the act, why should it be believed that it is not within the power of Congress or a legislature to do away with the defenses of contributory negligence and assumed risk, under proper conditions?

A further contention was stated in argument to this effect: That the federal employer's liability act was held unconstitutional in the case of Howard v. Railroad, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, because the Supreme Court construed it as undertaking to govern or control, not only cars engaged in interstate commerce, but also those engaged in intrastate commerce, and the point is made that, as the state statute is substantially a copy of that act, it is subject to the same objection, in that it purports to cover cars in every service, those in interstate commerce, as well as those in intrastate commerce. We do not believe the conclusion soundly follows for a number of reasons:

[7] First. Said state statutes regulating the relation of master and servant are applicable

to those engaged in interstate commerce until Congress has acted. Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819; M. P. Ry. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; Railway v. Herrick, 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109. The state statute, then, even if we construed it as undertaking to cover cars in every service, interstate as well as intrastate, is unquestionably valid, as against this objection, until Congress has acted. When Congress does act, as it has done, the result is simply to limit the application of the state statute to cars in intrastate service.

[8] Second. It is elementary law that a statute attacked for unconstitutionality will always be sustained as to those portions not clearly unconstitutional, save in the event the unconstitutional portions and the constitutional portions are so intermingled as that they cannot be severed. The very federal employer's liability act which was held unconstitutional, in so far as it purported to regulate intrastate commerce, was yet sustained as to the territories and the District of Columbia. E. P. & N. E. Ry. v. Gutierrez, 215 U. S. 97, 30 Sup. Ct. 21, 54 L. Ed. 107. It is clear that, if an act of Congress attempted to regulate intrastate commerce, it is necessarily unconstitutional; but it does not at all follow that a state statute, purporting to regulate safety appliances on cars in all services, or the carrier's liability on all railroads, would be unconstitutional, because it might to some extent affect interstate commerce. We are of opinion, therefore, that the statutes attacked are not subject to the objections urged to them.

[9] With regard to appellant's contention that the defect in the coupling appliance could not be the proximate cause of this accident, because Swan saw the defective condition before he was injured, we fear that we do not appreciate the full force of this contention. To our minds, it is entirely immaterial whether Swan knew of the defect beforehand or not. To us, this would be material on the question of assumed risk, and also as touching contributory negligence; but both of these defenses being eliminated by the statute, we are unable to see why his knowledge of the defect would prevent it from being the proximate cause. We are of the opinion that to give it this effect would be merely to introduce into the case the defense of assumed risk under another name. The case of Schlemmer v. Railway, 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, is illustrative of our ideas. In that case the plaintiff was coupling a shovel car, not equipped with automatic coupler; it had no buffers, and the coupler was so high that there was grave danger that the car would pass over the buffers on the other car and injure the person making the coupling. The mode of coupling was to go below the level of the cars, raise an iron bar with an eye on the shovel car, and secure it in the other coupler by pin; in so doing the plaintiff raised his head too high, and was killed. The federal safety appliance act of 1893 (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) provided that if there was no automatic coupler the defense of assumed risk should not be available. The state court held that Schlemmer was guilty of contributory negligence as a matter of law. Mr. Justice Holmes, in rendering that opinion, stated that the practical difference between assumed risk and contributory negligence, to his mind, was in the degree of their proximity to the particular harm. The preliminary conduct of going into the dangerous employment or relation is said to be accompanied by assumption of the risk, the act more immediately leading to a specific accident is called negligence, but the difference between the two is one of degree, rather than of kind, and when a statute exonerates a servant from the former, if at the same time it leaves the defense of contributory negligence still open to the master, unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of the risk under another name, and reversed the case upon the proposition that the possibility that Schlemmer might miscalculate the height to which he could safely raise his head is so inevitably and clearly attached to the risk which, under that statute, he did not assume, as to prevent a court from holding, as a matter of law, that he was guilty of contributory negligence.

This case is exactly illustrative of our opinion on the subject under consideration. If the defect was in the coupler, the railroad company could have no benefit from the defense of assumed risk or contributory negligence. To say that because Swan saw the defect it could not be the proximate cause would be introducing, under another name, the same defense which by the statutes was forbidden. It was argued before us that, unless his knowledge of the defect would prevent it from being the proximate cause, it would follow that Swan could deliberately place himself between the couplers, and the defendant would be liable. Without expressing any opinion on this rather abstract proposition, it suffices to say that we have no such condition here present. What Swan did was to attempt to perform what he testified was his duty, i. e., to make the coupling, by using his foot, and he was hurt in an attempt to perform the service he was hired to discharge.

[10, 11] It is further contended that the defect in the coupler was not the proximate cause, as a matter of law, in that there was an intervening cause of the injury, to wit, Swan's placing his foot upon the coupler. We do not believe that this proposition is sound. To begin with, it is familiar law that if an accident occurs from two causes, both due to negligence of different persons, but together the efficient cause of the accident, all

are liable. Railroad v. Croskell, 6 Tex. Civ. App. 160, 25 S. W. 489; Markham v. Navigation Co., 73 Tex. 247, 11 S. W. 131.

[12] The cases cited are, of course, those where the two negligent causes of the accident are by different persons, or persons other than the one injured. Ordinarily, where the accident is caused by two negligences, that of the defendant and that of the injured person contributing together, there can be no recovery; but when, as in this case, by virtue of the statutes, the contributory negligence is eliminated, the cases cited become of some value, in that they hold that, where two negligences cause the accident, both negligent performers are liable. It follows that if this accident was caused by the combined negligence of the railway and of the plaintiff, and if a valid statute provides that the negligence of the plaintiff shall not bar a recovery, it leaves the defendant liable for its negligence which contributed to the accident. It may be stated further as a generic proposition, that, while, in some instances, an intervening cause in the chain of causation may prevent the original negligence from being the proximate cause, yet, if the intervening act might reasonably be apprehended by the original wrongdoer, such intervening cause will not prevent the original negligence from being the proximate cause. There is the further element of whether the defect in the coupler could be held not to be the proximate cause as a matter of law, or whether it should be submitted to the jury to determine under a proper definition. We are of the opinion that, had the court assumed, as a matter of law, that the defect in the coupler was the proximate cause, or had he assumed, as a matter of law, that the placing of Swan's foot on the coupler was the proximate cause, he would have directly erred in either instance. It follows that it was for the jury to determine. The Delk Case, supra, and the case of Railroad v. Conway, 44 Tex. Civ. App. 68, 98 S. W. 1071, were exactly similar to this case on their facts; in each instance, the plaintiff being injured while attempting to hold a coupler in line with his foot. The Delk Case was tried under the original safety appliance act, and the Conway Case was tried under the general law, so that there arose in one case issues of assumed risk and contributory negligence, and in the other case issues of contributory negligence. In each instance, it was directly held that these issues were for the jury. We can find no difference, in reason, between the cases, and are of the opinion, therefore, that the question of proximate cause was properly submitted to the jury.

[13] In the charge of the court in this case, proximate cause was defined to be "a cause without which the injury would not have happened, and which, in a natural and continuous sequence, produces an injury; and,

in order to warrant a finding that negligence is the proximate cause of any injury, it must appear from the evidence that the injury was the natural and probable consequence of the negligence, if any, and ought to have been foreseen as a result likely to occur in the light of the attending circumstances." Therefore we are of opinion, first, that, as a matter of law, it could not be correctly held that the defect in the coupler was not the proximate cause of the accident; second, that it was proper to submit the question of proximate cause to the jury; and, third, that the charge of the court sufficiently defined it.

What we have said disposes, in substance, of all the assignments of error. There are a few of minor importance which, while they have been duly and carefully considered, will not be discussed here, because to so do would protract this opinion to an unreasonable length. We conclude, also, that the verdict is not excessive, and therefore the case is affirmed.