Missouri, Kansas & Texas Railway Company of Texas v. State.

### No. 1675.    Decided March 20, 1907.

**1.—Constitutional Law—Penalty—Fourteenth Amendment.**

The Act of April 17, 1905, requiring railway companies, under the penalties and within the times therein prescribed, to erect water closets at all stations, is so oppressive and arbitrary, and practically impossible to comply with, as to violate the fourteenth amendment to the Constitution of the United States, though the law was duly enacted and proceedings under it were regular. (Pp. 423, 425.)

**2.—Statute—Effect—Notice.**

A statute is not effective, as notice of its provisions to those to be affected, until the date when by law it takes effect. (P. 425.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Wood County.

Suit was brought by the State to recover penalties, and defendant, appealing from a judgment by which they were recovered against it, on its affirmance, obtained writ of error.

*T. S. Miller* and *Perkins & Craddock,* for plaintiff in error.—The petition states no cause of action because the statute under which the penalties sued for are claimed is inoperative and void, in that it is too vague, indefinite and uncertain in its provisions, for the violation of which the penalties are prescribed, to be capable of practical and uniform construction and enforcement. To the point that penal statutes are to be strictly construed and are not favored by the law. State v. Williams, 8 Texas, 255; State v. Williams, 14 Texas, 98; Scoggins v. Perry, 46 Texas, 112; Murray v. Gulf, C. & S. F. Ry. Co., 63 Texas, 413; Austin & N. Ry. Co. v. Slator, 26 S. W. Rep., 233; Sabine & E. T. Ry. Co. v. Cruse, 83 Texas, 464; Gulf, C. & S. F. Ry. Co. v. Dwyer, 84 Texas, 194; Schloss v. Atchison, T. & S. F. Ry. Co., 85 Texas, 601; Houston, E. & W. T. Ry. Co. v. Campbell, 91 Texas, 551. To the point that statutes similar to the one under review are void for uncertainty. Louisville & N. R. R. Co. v. Commonwealth (Ky.), 35 S. W. Rep., 129; State v. West Side Ry. Co. (Mo.), 47 S. W. Rep., 959; Commonwealth v. Louisville & N. R. R. Co. (Ky.), 46 S. W. Rep., 700; Cook v. State (Ind.), 59 N. E. Rep., 489; People v. Taylor, 96 Mich., 576; Mathews v. Murphy (Ky.), 63 S. W. Rep., 785; Ex parte McNulty, 77 Cal., 164, 11 Am. St. Rep., 257; Louisville & N. Ry. Co. v. Railroad Com. of Tenn., 19 Fed. Rep., 679.

Said statute is arbitrary, capricious and unreasonable in its terms and classifications, and is an unwarranted and arbitrary interference with the constitutional rights of the appellant to carry on its lawful business of operating a line of railroad in the State of Texas. Houston & T. C. Ry. Co. v. Dallas, 11 Texas Ct. Rep., 962; Pullman Co. v. State, 64 Texas, 274; Chicago, B. & Q. Ry. Co. v. Drainage Comrs., 200 U. S., 592; Minneapolis v. Barber, 136 U. S., 313; Lawton v. Steele, 152 U. S., 133; Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150; Jacobson v. Massachusetts, 197 U. S., 11.

*E. A. Tharp,* county attorney, and *Howell & Nabors,* for defendant in error.—The statute in question appears sufficiently certain in its meaning, and is capable of being practically enforced. Louisville & N. Ry. Co. v. Commonwealth, 46 S. W. Rep., 697; Louisville & N. Ry. Co. v. Commonwealth, 45 S. W. Rep., 880. The act is not in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States. Campbell v. Cook, 86 Texas, 630.

The purpose of the act falls within the purview of a reasonable exercise of the police power of the State, and does not deprive appellant of property without due course of law. Neither proposition is therefore well taken. Sayles' Civ. Stats., art. 4521; 26 Am. & Eng. Ency. of Law, 499; International & G. N. Ry. Co. v. Pevey, 70 S. W. Rep., 778; State v. Kansas City, etc., Ry. Co., 32 Fed. Rep., 722.

*Williams & Williams* and *O. H. Cross,* also for defendant in error.—

Chapter 133 of General Laws of the Twenty-ninth Legislature, approved April 17, 1905, is plain, definite and certain, and does not violate either State or Federal Constitution. Sprigg v. Town of Garrett Park, 43 Atl. Rep., 813; Gulf, C. & S. F. Ry. Co. v. Rowland, 70 Texas, 298; 5 Rapalje & Mack Digest Ry. Law, p. 793.

BROWN, ASSOCIATE JUSTICE.—On the 4th day of November, 1905, the State of Texas, by the county attorney of Wood County, instituted this suit in the District Court of said county against the plaintiff in error, and, on the 21st day of November of that year, filed a first amended original petition, in which it was alleged, in substance, that the railroad company, on and after the 14th day of July, 1905, to the time of the filing of the amendment, was the owner of and operated a railroad through the said County of Wood, and had established and maintained in that county stations at Winnsboro, East Winnsboro, Alba and Golden, at each of which stations the said railroad company, during the said time, received and discharged passengers from its trains both in the day and nighttime. It is alleged that during the said time from the 14th day of July, 1905, to the 21st day of November, 1905, being eighteen weeks, the said railroad company failed and neglected to construct, maintain and keep at either of said stations a water-closet, or privy, in a reasonably clean and sanitary condition, and failed and neglected to keep separate water-closets for male and female persons at each of the aforesaid stations and depots, either within the passenger depot at said stations or at any reasonable or convenient distance from either of the said depots, for the accommodation of its passengers who were received or discharged from its cars at that place, or for its patrons or employes who had business with the said railroad company at each of the said depots. It is further averred that the railroad company failed and neglected to keep the water-closets and depot grounds adjacent to such water-closets well lighted in the nighttime, for at least one hour before the scheduled time for the arrival of its trains and for one hour after the arrival thereof. The State sought to recover of the railroad company the penalty of $100 a week for the failure to construct and maintain the said water-closets, as provided by "An Act to compel the railroads and railway corporations to erect and maintain water-closets or privies at passenger stations, to regulate the same, fix penalties and authorize suits therefor, with an emergency clause," approved April 17, 1905, which took effect ninety days after the adjournment of the Legislature. The railroad company filed general demurrer, special exceptions and a general denial. The demurrer and exceptions were overruled by the court, and the case was submitted to the judge, who entered judgment in favor of the State for the sum of $1,800, which judgment the Court of Civil Appeals affirmed.

This proceeding was inaugurated for the purpose of enforcing penalties against the railroad company for a violation of the following provision of a statute of the Twenty-ninth Legislature:

"Section 1. That each railroad and railway corporation operating a line of railway in the State of Texas for the transportation of passengers thereon shall hereafter be required to construct, maintain and keep

in a reasonably clean and sanitary condition, suitable and separate water-closets or privies for both male and female persons at each passenger station on its line of railway, either within its passenger depot or in connection therewith, or within a reasonable and convenient distance therefrom at such station, for the accommodation of its passengers who are received and discharged from its cars thereat, and of its patrons and employes who have business with such railroads and corporations at such stations.

"Section 2. That said railroads and corporations are hereby required to keep said water-closets and depot grounds adjacent thereto well lighted at such hours, in the nighttime, as its passengers and patrons at such station may have occasion to be at the same, either for the purpose of taking passage on its trains or waiting for the arrival thereof, or after leaving the same, and for at least one hour, both before the schedule time for the arrival of its said trains and after the arrival thereof at said station; provided, that said railroads and corporations shall not be required by the provisions hereof to keep said closets lighted at such stations where the said railroads do not receive and discharge thereat, in the nighttime, passengers on and from its cars.

"Section 3. Any railroad or railway corporation which fails, neglects or refuses to comply with the provisions of this act shall forfeit and pay to the State of Texas the sum of $100 for each week it so fails and neglects," etc.

The plaintiff in error challenges the validity of the law for the reason that it is in contravention of the Fourteenth Amendment to the Constitution of the United States, which provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law." The prohibitions contained in this clause of the Constitution apply "to all the instrumentalities of the State, and to its legislative, executive and judicial authorities, and, therefore, whoever by virtue of public position under a State Government deprives another of any right protected by that amendment against deprivation by the State violates the constitutional inhibition, and, as he acts in the name and for the State, he is clothed with the State's power, his act is that of the State." (Chicago, B., etc., Ry. v. Chicago, 166 U. S., 233.) After stating the facts of a proceeding in court which was held to be due process of law, the Supreme Court of the United States, in the case last cited, said: "But a State may not, by any of its agencies, disregard the prohibitions of the Fourteenth Amendment. Its judicial authorities may keep within the letter of the statute prescribing the forms of procedure in the courts, and give the parties interested the fullest opportunity to be heard, and yet it might be that its final action would be inconsistent with that amendment. In determining what is due process of law, regard must be had to substance, and not to form." If the statute involved in this litigation is invalid, then the fact that the proceedings in the court are regular will not constitute it due process of law, by which the penalties denounced against the railroad company would be enforced.

The question recurs, Is the statute under which the proceeding is had in violation of the Constitution of the United States, as above indicated? It is a well-established principle of statutory construction that penal statutes must be strictly construed in determining the liability of the person upon whom the penalty is imposed, and that the more severe the penalty, and the more disastrous the consequence to the person subjected to the provisions of the statute, the more rigid will be the construction of its provisions in favor of such person and against the enforcement of such law. (Suth. Stats. Const., sec. 322, Potter's Dwaris, 244.) A penal statute such as now before us must be couched in such explicit terms that the party upon whom it is to operate may, with reasonable certainty, ascertain what the statute requires to be done, and when it must be done, otherwise there would be no opportunity for a person charged with the duty to protect himself by the performance of it according to the law. (Suth. Stats. Const., sec. 324, Potter's Dwaris, 246-251; Tozer v. United States, 52 Fed. Rep., 917.) In the case last cited Judge Brewer said: "But, in order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act can not depend upon whether a jury may think it reasonable or unreasonable." Looking at this statute in the light of the above rule of construction, we find that it denounces against the railroad company a penalty of $100 a week for each county through which it operates its passenger trains and in which it maintains passenger stations, for a failure to perform any one of the several things which is enjoined upon it by the terms of the act. The court judicially knows (which is a matter of common knowledge) that the railroad of the plaintiff in error extends through a large number of counties in which are many stations. The statute provides that the penalties shall be inflicted for each week that the railroads shall fail, or refuse, or neglect to perform the duties therein prescribed in each county and at each station, and the question arises, when shall the railroad company be liable for the first week's penalties? Does the week begin to run from the first day when the law took effect? and, if so, How can the railroad company protect itself, since it would be required, within the one week's time, according to that construction, to place in all the counties through which it runs, and at every depot in each county, a closet or closets with all the equipments therein prescribed? That this would be practically impossible is evident, and such a requirement would be so oppressive and arbitrary that by no known authority could it be held to be "due process of law." If it did not run from the first day on which the statute took effect, what time did the railroad company have in which to comply with the statute before the penalties would be inflicted upon it? There is not a sentence in the law from which the railroad companies of the State could determine the time allowed for the completion of the work required, except under the construction that all must have been completed within one week from July 14, 1905. Surely such a law, if enforced, would take from the railroad company its property, in the penalties exacted by the statute, without due process of law, in violation of the principles of right.

Article 3, section 39, of our Constitution provides: "No law passed by the Legislature, except the General Appropriation Act, shall take effect

or go into force until ninety days after the adjournment of the session at which it was enacted, unless, in case of an emergency, which emergency must be expressed in a preamble or in the body of the Act, the Legislature shall, by a vote of two-thirds of all the members elected to each house, otherwise direct; said vote to be taken by yeas and nays, and entered upon the journals."

The Act under examination did not have the emergency declaration, hence it did not go into effect until the 14th day of July, 1905, but that fact will not affect the question of its validity, for the railroads were not required to take notice of it until it became operative. (Cooley, Const. Lim., 188; Price v. Hopkins, 13 Mich., 319.) The Constitution of Michigan contained this language: "No public Act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same was passed, unless the Legislature shall otherwise direct." In Price v. Hopkins, cited above, Judge Cooley said: "To make this Act operate as notice from its passage, seems to us to violate the constitutional provision we have quoted. To do that, we must hold that it has at least the effect and force of notice, during a period when the Constitution has declared it shall not take effect or be in force, and when the obvious design and intention was that it should have no force or effect whatever." There is a conflict in the authorities upon this point, but we believe those cited are supported by the better reasoning. The words, "or go into force," used in our Constitution, emphasizes the idea that the law is without vitality until the ninety days shall expire.

It is unnecessary for this court to pass upon the other questions presented. It is ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed, and this cause be dismissed.