

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN  
~~JOHN BEN SHEPPERD~~  
ATTORNEY GENERAL

AUSTIN 11, TEXAS

April 11, 1939

House of Representatives  
46th Legislature  
Austin, Texas

Gentlemen:

Opinion No. O-563  
Re: Constitutionality of  
Senate Bill 75.

This is in reply to your request for an opinion as to the constitutionality of Senate Bill 75, which request was communicated to this Department by letter dated March 28, 1939, from Honorable R. Emmett Morse, Speaker of the House.

The body of Mr. Morse's letter reads as follows:

"I am attaching hereto a copy of Senate Bill 75, which seeks to regulate Travel Bureaus. It is my understanding and the understanding of the House that this bill has been passed twice and on both occasions has been declared unconstitutional.

"The House just voted for me to ask you for an opinion as to the constitutionality of the attached bill. I will appreciate your attention to this matter as soon as is possible."

One of the cardinal and elementary principles in the field of constitutional law is that the propriety, wisdom, and expediency of legislation are exclusively matters for legislative determination. Recognizing this principle, we must, therefore, assume that, should the Legislature enact Senate Bill 75 into law, such enactment will be a conclusive determination by a proper body as to the propriety, wisdom, and expediency of such legislation. Thus the sole question to be determined by this opinion is whether or not such legislation, if enacted, will violate any provision of the Texas or United States Constitution.

To illustrate the difficulties which attend the proper determination of this question, we quote from the opinion in <u>Ex parte Martin</u>, 74 S.W. (2) 1017, by the Court

of Criminal Appeals of Texas, where it is said:

"It seems well settled that statutes may be unconstitutional in their operation as to some person and states of facts when not so as to others." Citing Singer Sewing Machine Co. v. Brickwell, 233 U. S. 304, 58 L. ed. 974, and other cases.

It is obvious that at this time we are unable to predict with certainty the persons, if any, who may in the future attack this proposed legislation as unconstitutional, nor can we accurately foretell the state of facts which such persons may present to the court in which such attack is made. In the absence of such knowledge on our part, it follows that we are necessarily unable now to predict with certainty what holding will be made by the court, in the event of such an attack. However, as the courts of last resort in Texas have heretofore in three instances rendered decisions as to the constitutionality of previous acts of the Legislature which sought to regulate the same type of business as does Senate Bill 75, we believe a fairly accurate opinion can be rendered by a comparison of the prior acts with Senate Bill 75 in the light of the decided cases.

In Ex parte Martin, 74 S. W. (2) 1017, by the Texas Court of Criminal Appeals, the act found in Ch. 114, Acts 1st Called Session 43rd Legislature (Vernon's Annotated Penal Code, Article 827d) was attacked by a party who conducted a travel bureau and whose business it was to bring together persons owning or operating automobiles with other persons who did not have automobiles but who desired to make expense sharing trips with the owners of automobiles. A charge of $1.00 was made by the operator for the travel bureau for bringing such parties together. Article 827d of the Penal Code forbade any person to engage in the business of the travel bureau unless the person in charge of the motor vehicle to be used in the contemplated trip had first obtained a chauffeur's license, and further required that said vehicle be equipped with license plates and that the owner of the vehicle had complied with all of the laws of Texas in connection with the transportation of passengers for hire on the public roads of Texas. Said Act further required that an examination of the public records of Texas be made by any one contracting with the owner etc. of the motor vehicle for a share-expense trip to ascertain whether such owner has properly complied with the law as to chauffeur's license and regulating the operation of motor vehicles for hire. The Court held the act to be unconstitutional because it violated

the Fourteenth Amendment of the United States Constitution, also Section 19, Article 1, Constitution of Texas, which latter constitutional provision provides that:

> "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities or in any manner disfranchised except by the due course of the law of the land."

In holding Article 827d of the Penal Code unconstitutional, the court used this language:

> "* * * as far as we can tell from the record before us, this appellant was engaged in the useful and lawful occupation of selling information to private citizens, the conduct of which business was neither in fact or threat an infringement or trespass upon the health, safety, comfort, or welfare of the public. He drove no cars on the public roads or bridges as a business. He made no contracts controlling the share-expense trips of his customers. He sold information by means of which the purchaser thereof was related to the seller only so far as pertained to the route expected to be taken by each or both. He gave no guaranty as to the good or bad character of the parties thus put in touch with each other, or as to the kind or quality of their vehicles.

> "We are further constrained to hold the provisions of said act unreasonable. Same forbids the sale of information by appellant, unless and until the operator of the car intended to be used on the share-expense trip shall have obtained a chauffeur's or driver's license in accordance with existing laws of Texas.' The only law possibly applicable, known to this court, is article 6687, Revised Civil Statutes, 1925, which requires one whose business is the operation of a car for hire to take out a license and pay therefor, in token of which he receives a badge which he is required to wear when so engaged. It would not require reasoning to make plain the fact that the immediate effect of attempted application of this state would be to put appellant out of business, for the parties to whom he sold the information were not hired drivers of public cars engaged in the business of transporting passengers for hire, but were and are private persons, driving their own cars, or other private cars, as far as this record shows, on their own private business, who for company's sake or economy's sake wished to form

contacts with other persons by means of which the
expenses ordinarily incident to a motor car trip
might be shared between them, a proposition with
which appellant has no other connection save merely
to bring the parties together. The fair effect of
the requirements of this statute would unquestion-
ably end the business of appellant, and this is re-
garded by us as unreasonable."

The Court concluded its opinion with this lan-
guage:

"Being unable to discern any ground of in-
terference with, danger to, or trespass upon, the
public morals, health, safety, comfort, or welfare
of appellant's business as shown to be conducted,
and believing the act subject to the objections above
discussed, the judgment remanding this appellant will
be reversed and the appellant ordered discharged."

Following the decision of Ex parte Martin, the
44th Legislature at its Regular Session of 1935 enacted
Chapter 325, Acts of 1935, which appears as Vernon's Annotat-
ed Statute, Article 911c. The constitutionality of Article
911c was attacked in the case of Ex parte Talkington, 104 S.W.
(2d) 495 (Texas Court of Criminal Appeals) by a person who was
in a similar situation to the appellant in Ex parte Martin,
Article 911c among other things required transportation
agents to secure licenses from the Railroad Commission of
Texas; made it unlawful for one to act as a transportation
agent without first having secured such a license; required
the transportation agent to deliver to the Commission and to
maintain in force a bond in the sum of $1,000.00, in such
form as the Commission may prescribe, "for the protection,
use and benefit of any person or persons who shall suffer loss
or damage by reason of the failure of any person or motor
carrier, through whom transportation may be arranged or over
which tickets may be sold by the applicant, to properly fulfill
any contract or agreement for such transportation which may
have been partially or wholly negotiated by the applicant."
Article 911c further required the owner of the motor vehicle
to file adequate bonds or insurance policies with the Railroad
Commission, and further required the transportation agent to
request of the owners of the motor vehicle that such owners
exhibit to the agent a certificate from the Railroad Commis-
sion certifying that such owner had on file in the Railroad
Commission's office adequate bonds and insurance policies.

In holding Article 911c unconstitutional, the court used the following language:

"Bearing in mind what we have above set out from the statement of facts showing the business of appellant to be confined to selling information, and that he does not sell or negotiate transportation, nor own nor operate any motor vehicle over any highway in this State or elsewhere, and does not dictate or suggest the terms or conditions upon which the purchasers from him of information shall contract with each other, or whether they go by dirt road or paved, or what route they take, this law seems clearly in violation of the Fourteenth Amendment to our Federal Constitution, and of Section 19 of our own Bill of Rights, in that it prohibits this man or any other engaging in a like occupation, upon the same terms and conditions, because of requirements unreasonable, impossible of performance, without fair application, and prohibitive, and surrounds his attempt to engage in this business with conditions precedent and concomitant such as reveal themselves to a casual reader of these partes or of the statute which we have above quoted as being of the kind and character we have just stated."

The Court then proceeded to hold that the conditions of the bond required by Article 911c from transportation agents were unreasonable, arbitrary, and unconstitutional. The Court said:

"We have seen no clearer case of abridgment of the rights and privileges of the citizens of this state and of the United States, and the invasion of the liberties of a citizen to engage in and pursue a lawful business than appears in this record. We call special attention to the authorities cited in Ex parte Martin, supra, and the reasoning indulged."

In concluding its opinion the Court discussed the case of Bowen v. Hannah, 167 Tenn. 451, 71 S.W. (2) 672, and with respect to that case, said:

"However, we find ourselves unable to agree with our sister court in some of its conclusions. We see no parity between the

law applicable to the business of pawnbrokers, or
dealers in secondhand automobiles, or junk deal-
ers, and the law here under discussion.   Nor
are we quite able to follow the argument that
because men have picked up and carried hitch-
hikers who have turned out to be robbers, this
furnishes any reason to regard as dangerous
or to hold bad a law against a business which
merely brings parties together, who on their
on responsibility, and with no limitations
upon their investigation and inquiry, if de-
sired, may eventually enter open-eyed into an
agreement to make a trip together."

Two months after the decision in Ex parte Talk-
ington, the Supreme Court of Texas in Martin et al v. Rail-
road Commission, et al, 106 S. W. (2) 653, expressly follow-
ed the opinion of the Court of Appeals and held Article 911c
to be unconstitutional, notwithstanding the fact that the
findings of fact made by the trial court were extremely favor-
able to the proponents of the legislation.

Our inquiry now turns to an analysis of the pro-
visions of Senate Bill 75 and a comparison of the provisions
of Senate Bill 75 with the provisions of Article 827d of the
Penal Code and of 911c, Vernon's Annotated Civil Statutes,
in an effort to determine whether the changed provisions of
Senate Bill 75 satisfy or fail to satisfy the constitutional
objections and defects that were urged against previous legis-
lation and sustained by the courts of Texas.   Such analysis
of Senate Bill 75, in the light of the cases quoted from at
length in this opinion, compels us to conclude that Senate
Bill 75, if enacted in its present form and if attacked un-
der a set of facts and circumstances similar to those pre-
sented in Ex parte Martin and the other cases cited above,
will be stricken down by the court as unconstitutional.

This conclusion is reached notwithstanding the
fact that we heartily agree with the principle announced
in Henry v. Bates, 260 S. W. 190 (Texas Court of Criminal
Appeals) and cases there cited, to the effect that:

"The authority of the State Government
to place restrictions upon the exercise of
lawful vocation is too well settled for con-
troversy."   Citing numerous cases.

The basis for our conclusion is our belief that
the court will hold the restrictions and requirements of
Senate Bill 75, particularly those contained in Section 3

and 6 thereof, to be unreasonable and, therefore, unconstitutional.

Section 3 prohibits the selling or offering for sale by any person etc., for a compensation of transportation for passengers of any character.  It further prohibits the making of any contract, agreement or arrangement to provide, procure, furnish or arrange for any transportation, directly or indirectly, whether by the selling of tickets or of information, or the introduction of parties, where a consideration is received or otherwise.  It further prohibits any person etc. from holding himself out by advertisement, or otherwise, as one who performs any of the above prohibited acts.  Section 3 then provides that the prohibitions of the Act shall extend to all persons etc. "unless such person, firm, corporation, or association holds a broker's license issued by the Railroad Commission of Texas, authorizing such transportation"; the act then further provides that:

"In the execution of any contract, agreement, or arrangement to sell, provide, procure, furnish or arrange for transportation of passengers from one incorporated city to another, whether directly or indirectly, and whether by the selling or giving of information, or otherwise, it shall be unlawful for such person to employ any person, firm, corporation, or association operating a motor vehicle or vehicles who or which is not the lawful holder of an effective certificate of convenience and necessity issued by the Railroad Commission of Texas."

Section 3 of the Act further provides that:

"Nothing herein contained shall in any manner affect the rights of private individuals as a mere incident to travel who are not carriers for hire to enter into agreements or arrangements for transportation on a share-expense plan where in such negotiations or arrangements the services of a broker, as herein defined, do not intervene or are not used."

Section 6 provides that no license shall issue by the Commission, nor shall any license remain in force, unless the broker shall have furnished a bond or other security approved by the Commission, in such form and amount as the Commission may prescribe conditioned for the protection of the general public and which will insure financial responsibility for all acts of said broker for which such broker

would be legally liable, "and further conditioned to require the supplying of authorized transportation and authenic information in accordance with contracts, agreements or arrangements therefor with authorized carriers, authenticated copies of which contracts shall be filed with the Railroad Commission."

The effect of Section 3, in our opinion, is to prohibit the holder of a properly issued broker's license from performing any act which directly or indirectly arranges for, procures or provides transportation for another unless such arrangement etc. for transportation is made with a person, firm or corporation regularly and lawfully engaged in the transportation of passengers for hire, as evidenced by a certificate of convenience and necessity issued by the Railroad Commission of Texas. Section 6 exempts private individuals from the prohibitions of the Act only when the services of a broker do not intervene or are not used. Thus Senate Bill 75 makes it unlawful for any person, whether holding a broker's license or not, to assist in bringing persons together for the purpose of making share-expense tours, and such bill further makes it unlawful for any private individual who desires to make a share-expense tour to use the services of a broker. If the language used in Section 3 is not intended to have the meaning we have ascribed to it, then we are at a loss to understand the meaning of such language and in such event, we, of necessity, would be required to hold that Section 3 is void because of uncertainty, ambiguity and vagueness.

The condition of the bond required by Section 6 of the bill makes a licensed broker liable for the fulfillment of any transportation contract or arrangement even though his contract or arrangement is independently made by a motor owner and a traveler and even though the broker takes no part in the making of said contract other than to introduce the parties who make such contract.

It is our opinion that the courts which struck down as unconstitutional 827d of the Penal Code and Article 911c of Vernon's Annotated Civil Statute will reach the same conclusion with respect to Senate Bill 75, if an attack is made thereon by persons who are able to prove that the conduct of their business is free from the evils, irregularities, and abuses that are outlined in Section 15 of Senate Bill 75. We express this opinion because we believe that the effect of the provision of Sections 3 and 6 of Senate Bill 75 will be held by the courts to be subject to the same constitutional objections and defects that were

condemned in Ex parte Martin and in Ex Parte Talkington, as revealed in the opinions of those cases which we have quoted at length.

We are also of the opinion that Section 11 of the Act is subject to attack as being unconstitutional. Section 11 makes it a misdemeanor for any person to violate or fail to comply with Senate Bill 75 <u>or any rule, regulation, order or decree of the Commission promulgated under the terms of the Act.</u> Punishment for violation is fixed by fine of not less than $100.00 and not more than $200.00, and the violations occurring on each day are declared to be a separate offense. Section 3 of the Act provides that the Commission "shall prescribe such reasonable rules and regulations as may be found necessary." Nowhere in Senate Bill 75 is provision made for the giving of notice as to the rules and regulations to be promulgated by the Commission, nor is any limitation or restriction placed upon the authority to promulgate rules and regulations other than that such rules "shall be reasonable". In our opinion Section 11 in its present form is void, because it violates the well settled constitutional requirement that before the violation of rules promulgated by a Commission or other regulatory body of the Government can be made a penal offense, reasonable notice must be given of such rules and the act or omission condemned must be defined with reasonable certainty by the Legislature. This principle is well expressed in M. K. & T. Ry. Co. v. State, 100 Tex. 420, 100 S.W. 766, by the Supreme Court of Texas, and in Ex parte Leslie, 223 S. W. 227 by the Texas Court of Criminal Appeals. In the case last cited, the court said:

"A completed law, if penal in its effect, must define the act or omission denounced as criminal with some degree of certainty. And if by the law one is, as in the present case, commanded to do some affirmative act, due process of law requires that he be given reasonable notice as a predicate to his punishment for failure to comply with the demands. In conferring upon an instrument of government, such as the live stock sanitary commission, the power to make rules, the nonobservance of which constitutes a criminal offense, it is deemed necessary that the Legislature define the power and place limitations upon the authority to promulgate rules, to the end that they may not be lacking in the essential ele-

ments of a law denouncing an offense."  Citing
numerous cases.

        We, therefore, answer your inquiry as to
the constitutionality of Senate Bill 75 by stating that,
in our opinion, such bill in its present form will be
held by the court to be unconstitutional.

        In conclusion we will state that we have
received a great deal of information and assistance
from written briefs furnished to us by lawyers, notably
Mr. T. S. Christopher, who have had previous experience
in litigation involving the constitutionality of the
1933 and 1935 Acts, which are referred to in this
opinion.  In order that there may be no confusion with
respect to the scope of this opinion, we will further
state we believe it to be settled beyond the possibility
of doubt that the operation of a travel bureau is a
business which can properly be regulated by the Legis-
lature, if the Legislature deems regulation desirable.
The effect of this opinion is simply to state that,
in our opinion, the method and means of regulation pro-
vided for in Sections 3, 6 and 11, Senate Bill 75, will
be held to be unreasonable and unconstitutional by the
courts which struck down the previous legislation re-
ferred to.

                              Yours very truly,

                              ATTORNEY GENERAL OF TEXAS


                        By  /s/ Robert E. Kepke
                               Robert E. Kepke
REK:BT:zt                           Assistant


APPROVED:

/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS