# Supreme Court of Texas

No. 21-1088

Fire Protection Service, Incorporated,

*Appellant,*

v.

Survitec Survival Products, Incorporated,

*Appellee*

On Certified Question from the
United States Court of Appeals for the Fifth Circuit

**Argued March 22, 2022**

JUSTICE HUDDLE delivered the opinion of the Court.

A life-raft supplier entered into an oral agreement with a dealer allowing the dealer to sell and service the life rafts. The parties operated under their at-will agreement for years. During that time, the Legislature passed a statute that requires good cause for suppliers to terminate certain dealer agreements and imposes liability on suppliers who fail to comply. The supplier here terminated the agreement without cause six years after the statute took effect. The dealer sued for

damages, claiming the termination was wrongful because the supplier lacked the good cause the statute required.

The Fifth Circuit asks whether application of the statute to the parties' preexisting agreement violates the Texas Constitution's prohibition against retroactive laws. We conclude it does not.

## I. Background

Survitec Survival Products, Inc., manufactures marine safety equipment, including life rafts. In the 1990s, Fire Protection Service, Inc., (FPS) orally agreed to be an authorized dealer and servicer of Survitec's life rafts. The parties agreed either of them could terminate their agreement at any time, for any reason or for no reason.

Several years later, the Legislature enacted the Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act. *See* TEX. BUS. & COM. CODE §§ 57.001–.402. The Act prohibits a supplier from terminating a dealer agreement without good cause. *Id.* § 57.153.

Nearly six years after the Act took effect, Survitec notified FPS that it was terminating their relationship. It is undisputed that Survitec did not provide FPS any reason for the termination. FPS sued Survitec in state district court, and Survitec removed the case to federal court. FPS alleges that Survitec violated the Act by, among other things, terminating without cause.

The case was tried to the district court without a jury. At the end of FPS's case-in-chief, Survitec moved for judgment on partial findings under Federal Rule of Civil Procedure 52(c). Survitec argued that applying the Act to the parties' preexisting at-will agreement would violate the prohibition on retroactive laws in Article I, Section 16 of the

2

Texas Constitution. The district court agreed. It granted Survitec's motion and entered judgment for Survitec.

FPS appealed and, at FPS's request, the Fifth Circuit certified to us the following question:

> Does the application of the [Act] to the parties' agreement violate the retroactivity clause in article I, section 16 of the Texas Constitution?

*Fire Prot. Serv., Inc. v. Survitec Survival Prods., Inc.*, 18 F.4th 802, 805 (5th Cir. 2021).

## II. Applicable Law

### A. Business and Commerce Code Chapter 57

The Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act regulates the business relationships between manufacturers or suppliers of certain types of equipment and the independent dealers that sell the equipment to the public. Act of May 25, 2011, 82d Leg., R.S., ch. 1039, § 1, 2011 Tex. Gen. Laws 2646, 2646. The Act applies to a "dealer agreement," which the Act defines as "an oral or written agreement or arrangement, of definite or indefinite duration, between a dealer and a supplier that provides for the rights and obligations of the parties with respect to the purchase or sale of equipment or repair parts." TEX. BUS. & COM. CODE § 57.002(4). It provides that "[a] supplier may not terminate a dealer agreement without good cause." *Id.* § 57.153.[1] And it enumerates circumstances in

---

[1] The Act contains separate subchapters dealing with termination of "single-line dealer agreements" and termination of "agreements other than single-line dealer agreements." *Id.* §§ 57.151–.155, .201–.205; *see also id.* § 57.002(16) (defining "single-line dealer agreement"). Both parties cite to the

which good cause for termination of a dealer agreement exists. *Id.* § 57.154(a).

The Act provides dealers a statutory remedy for violations. It states:

> If a supplier violates any provision of this chapter, a dealer may bring an action against the supplier in a court of competent jurisdiction for damages sustained by the dealer as a consequence of the supplier's violation, including damages for lost profits, together with the actual costs of the action, including the dealer's attorney's fees and paralegal fees and the costs of arbitrators.

*Id.* § 57.401(a). The statutory remedy is not exclusive and is in addition to any other remedy permitted by law or that may exist under the parties' agreement. *Id.* §§ 57.401(b), .402.

The Legislature passed the Act on May 25, 2011, and the Governor signed it into law the following month, on June 17, 2011. It took effect two and a half months later, on September 1, 2011. Act of May 25, 2011, § 5. The Act applies to all dealer agreements entered into or renewed on or after the Act's effective date. *Id.* § 4(a)(1). A dealer agreement existing before September 1, 2011, is governed by the law in effect before then, unless it "has no expiration date" and "is a continuing contract." *Id.* § 4(a)(2), (b).

---

subchapter governing agreements other than single-line dealer agreements, so we assume without deciding that the parties' agreement here is not a "single-line dealer agreement." We note, however, that both subchapters similarly prohibit a supplier from terminating a dealer agreement without good cause. *Id.* §§ 57.153, .202.

4

**B.      Texas Constitution Article I, Section 16**

The Texas Constitution commands: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."  TEX. CONST. art. I, § 16.   The U.S. Constitution, unlike the Texas Constitution, does not expressly prohibit "retroactive" laws.  But it does prohibit bills of attainder, ex post facto laws, and laws impairing the obligation of contracts.  *See* U.S. CONST. art. I, §§ 9 ("No Bill of Attainder or ex post facto Law shall be passed."), 10 ("No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . .").

As the U.S. Supreme Court has observed, a "presumption against retroactive legislation is deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).  It rests on the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place."  *Id.* (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)).

Distilling over 150 years of precedents involving the Texas Constitution's prohibition against retroactive laws, we set forth in *Robinson v. Crown Cork & Seal Co.* a "fuller statement of its proper application."  335 S.W.3d 126, 136 (Tex. 2010).  We observed that the presumption against retroactive laws advances two fundamental objectives of our system of government: the protection of "reasonable, settled expectations" and protection against "abuses of legislative power."  *Id.* at 139 (citing *Landgraf,* 511 U.S. at 265–66).   Put differently, our constitutional prohibition against retroactive laws

5

"protects settled expectations that rules are to govern the play and not simply the score, and prevents the abuses of legislative power that arise when individuals or groups are singled out for special reward or punishment." *Id.* at 145. To determine whether a statute is unconstitutionally retroactive, we first consider the nature of the rights claimed and the statute's impact on them. *Id.* at 147. If the statute disturbs a party's settled expectations, we then must consider whether the statute serves a public interest as opposed to simply benefiting one or a few private entities. *Id.* at 149.

Although *Robinson* refined our framework for analyzing whether laws are unconstitutionally retroactive, it did not break new ground but, rather, provided a unifying statement of the principles that we had applied in our earlier cases. One key principle is that a law is not retroactive in the constitutional sense unless it disrupts or impairs settled expectations. As we stated in *In re A.V.*, "[a] law that does not upset a person's settled expectations in reasonable reliance upon the law is not unconstitutionally retroactive." 113 S.W.3d 355, 361 (Tex. 2003) (citing *Landgraf*, 511 U.S. at 269–70). In that case, we held that an amendment to the Family Code creating a new ground for parental termination based on criminal conduct and incarceration was not unconstitutionally retroactive as applied to a father who had been convicted before the amendment was enacted. *Id.* at 361–62. We concluded that the father "could not reasonably expect that the State would not act to provide a safe environment for his children while he was imprisoned." *Id.* at 361. Similarly, in *Texas Water Rights Commission v. Wright*, we upheld a statute authorizing the forfeiture of

6

water permits for non-use, even though the permits were issued before the statute's enactment. 464 S.W.2d 642, 649 (Tex. 1971). We held that permit holders "could reasonably expect that their rights would be subjected to a remedy enforcing the conditions inherently attached to those rights." *Id.*

In determining whether a law disrupts or impairs settled expectations, we consider whether the law gives parties a "grace period" to adapt before the law takes effect. In *City of Tyler v. Likes*, we held that an amendment to the Tort Claims Act that made the city immune from a negligence claim for flooding that occurred before the amendment's effective date was not unconstitutionally retroactive. 962 S.W.2d 489, 502 (Tex. 1997). We noted that the amendment did not entirely eliminate the plaintiff's right to sue because she had time to file her lawsuit before the amendment took effect, including "more than two months from the time the change was made until the [amendment] became effective." *Id.* And in *Union Carbide Corp. v. Synatzske*, we observed that the period between the enactment and effective date of a statute imposing new prerequisites on asbestos-related claims "allowed a grace period for suits to be filed under the law as it previously existed." 438 S.W.3d 39, 58 (Tex. 2014). We held the statute was not unconstitutionally retroactive when applied to a claim that had accrued (but had not been filed) before the statute's effective date. *Id.* at 60. These statutory grace periods are required by our Constitution, which mandates that (with limited exceptions) statutes not take effect until ninety days after the legislative session adjourns. TEX. CONST. art. III, § 39. Not long after our Constitution's adoption, we explained that the

7

object of that section "was to give notice to the people of its passage, that they might obey it when it should become effective, and also to enable them to adjust their affairs to the change made, if any." *Halbert v. San Saba Springs Land & Live-Stock Ass'n*, 34 S.W. 639, 639 (Tex. 1896).

### III.    Discussion

### A.    Does the Act apply in this case?

The district court found the Act unconstitutionally retroactive as applied to the parties' preexisting agreement. Notably, the Act applies to a dealer agreement entered into before the Act's effective date only if it has no expiration date and is a continuing contract. Act of May 25, 2011, § 4(a)(2). The parties do not dispute that theirs was such an agreement. Thus, for purposes of answering the certified question, we assume without deciding that the parties' agreement was the type of "continuing contract" to which the Act applies.

Survitec also argued in the district court the Act was inapplicable for a different reason: life rafts do not constitute "equipment" under the Act. *See* TEX. BUS. & COM. CODE § 57.002(7)(A) (defining "equipment" to include "machinery, equipment, or implements or attachments to the machinery, equipment, or implements used for, or in connection with, any of the following purposes: . . . industrial, construction, maintenance, mining, or utility activities or applications"); *see also id.* § 57.002(4) (defining "dealer agreement" to mean an agreement regarding the purchase or sale of equipment). The district court denied Survitec's motion for summary judgment and initially "conclude[d] without reservation that the Survitec life rafts are 'equipment' for purposes of the Act's applicability." But the district court's later order granting

8

Survitec's motion for judgment and declaring the Act unconstitutionally retroactive states that the district court "need not address definitively the difficult question whether the life rafts are 'equipment' under the Act."

Survitec pressed this argument as an alternative ground for affirmance, but the certified question does not mention it, and neither party briefed the issue in this Court. The State, as amicus, on the other hand, urges us to decide whether life rafts are "equipment" covered by the Act, arguing that our precedents require resolution of that question before reaching the constitutional question the Fifth Circuit posed. We of course adhere to our rule that courts must avoid reaching constitutional questions when issues can be resolved on nonconstitutional grounds. *See Phillips v. McNeill*, 635 S.W.3d 620, 630 (Tex. 2021) (describing this rule as "not optional"). But this case comes to us not through an appeal from a Texas state court, but on a certified question. We therefore decline the State's invitation to address Survitec's claim that life rafts are not "equipment" under the Act, and we express no opinion on it. *See Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 n.6 (Tex. 2020) ("To avoid exceeding our jurisdiction, 'we answer only the questions certified and nothing more.'" (quoting *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 349 (Tex. 1990))).

## B. Did Survitec rely on the wrong clause of Article I, Section 16?

In a waiver-like argument, FPS asserts that Survitec's constitutional challenge should fail because it should have been (but was not) brought under the clause of Article I, Section 16 prohibiting "any law impairing the obligation of contracts." TEX. CONST. art. I, § 16. FPS

9

contends that Survitec's reliance on a distinct clause in Article I, Section 16 prohibiting a "retroactive law" is improper. It argues these two clauses must not be read as interchangeable, or one would be rendered superfluous.[2]

Survitec responds that its challenge under the retroactivity clause is proper because the contracts clause addresses only a party's right to enforce the *other party's* contractual obligations. Survitec thus disclaims any reliance on the contracts clause. Survitec asserts its "right to enforce a contractual termination right" is a positive-law right with which the Act interferes. Alternatively, Survitec contends that overlap between the clauses would not render either superfluous.

We need not decide whether Survitec brought its challenge under the wrong clause of Article I, Section 16 because we conclude that the Act's application to the parties' agreement does not violate the prohibition against retroactive laws as Survitec asserts. Survitec does not assert that the Act's application violated the contracts clause, and the certified question does not address the issue. We therefore express no opinion on whether the Act's application may have been unconstitutional under that clause as a law impairing the obligation of contracts.

## C. Does application of the Act violate the retroactivity clause?

Neither party disputes that their agreement was at-will such that, before the Act's effective date, either party could terminate the

---

[2] While FPS's opening brief devotes significant attention to this argument, it was not mentioned at oral argument.

agreement at any time for any reason (or no reason) without penalty. Once the Act became effective, however, Survitec could no longer terminate the agreement without good cause. TEX. BUS. & COM. CODE § 57.153. Survitec thus argues that the Act is unconstitutionally retroactive because it "eliminated Survitec's right to have an at-will relationship with FPS." We disagree.

FPS asserts that Survitec violated the Act when it terminated their agreement. Yet it is undisputed that the Act did not change the legal consequences of termination after the termination had already occurred. Because "the legal effect of [Survitec's] conduct [is being] assessed under the law that existed when the conduct took place," *see Landgraf*, 511 U.S. at 265, and, as discussed below, Survitec had an opportunity to avoid those consequences before the Act took effect, the application of the Act presents no problem of retroactivity in the constitutional sense. As applied here, the Act does not "change [the rules] after the game has been played." *Robinson*, 335 S.W.3d at 139.

Under Survitec's view, the Act retroactively eliminated its right to continue its at-will relationship with FPS in perpetuity. But this misunderstands the protections afforded by the retroactivity clause. It protects only "settled expectations." *Id.* at 145; *see A.V.*, 113 S.W.3d at 361 ("A law that does not upset a person's settled expectations in reasonable reliance upon the law is not unconstitutionally retroactive."). Survitec entered into an agreement that could be terminated at any time by either party. It had no reasonable settled expectation that it would have the right to continue to operate in a relationship with FPS under

11

those same terms, or any terms, for any length of time, let alone in perpetuity.

Indeed, Survitec's continued performance under the parties' at-will agreement after the Act was passed demonstrates its assent to operate under the Act's requirements. As we explained in *Hathaway v. General Mills, Inc.*, if an employee has notice of a proposed change to an at-will employment contract and continues working with knowledge of the changes, that employee "has accepted the changes as a matter of law." 711 S.W.2d 227, 229 (Tex. 1986); *see also In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002). So too in this context.

Survitec also argues that the Act eliminated its contractual "right to terminate [the relationship] at will" without further duties or liabilities. But Survitec had an opportunity to avoid the consequences that the Act attached to termination without cause. The period between the Act's enactment and effective date provided Survitec with sufficient notice of the Act's requirements in that it allowed Survitec time to order its affairs as it chose. Survitec had a window of ninety-nine days from the Act's passage and seventy-six days from the Governor's signature, during which it could have taken action to avoid or defer application of the Act. It could have terminated the agreement during that grace period, which would have allowed it to avoid the Act's application altogether. Or it could have entered into a new agreement with FPS for a fixed term that otherwise contained the same terms as the parties' previous agreement, including the ability to terminate at will, and thus avoided the Act's application to the agreement during the new

12

agreement's term. *See* Act of May 25, 2011, § 4(b). Survitec instead chose to continue operating under the parties' agreement.

Survitec responds that the period between the Act's passage and effective date was insufficient to provide Survitec with notice of the Act's potential effect on its asserted right to terminate without cause. In support, Survitec relies primarily on *Missouri, K. & T. Ry. Co. of Texas v. State*, 100 S.W. 766 (Tex. 1907). That case involved a railroad company's due-process challenge to a statute that required construction and maintenance of restrooms at each passenger station and imposed weekly fines for noncompliance. We observed that compliance would have been "practically impossible" because the railroad company had only one week after the statute's effective date in which to build compliant restrooms at every station. *Id.* at 767. Accordingly, we held that, despite the ninety-day period between the statute's enactment and effective date, this requirement was "so oppressive and arbitrary" that it violated due process. *Id.* In doing so, we noted that "the railroads were not required to take notice of [the statute] until it became operative." *Id.* at 768.

Survitec urges us to read *Missouri* to hold that enactment of a statute cannot constitute notice of a forthcoming change in the law. But that is not what *Missouri* held. *Missouri* did not involve an assertion that the law was retroactive. Our concern in that case was whether a penal statute afforded parties sufficient time to build the structures necessary to comply. We did not hold that a statute's enactment cannot serve as notice of an upcoming change in the law.

Survitec cites other cases that cite *Missouri*, but they do not support Survitec's argument. For example, in *Popham v. Patterson*, we were asked to determine when a statute that changed the term length of an elected position took effect. 51 S.W.2d 680, 683 (Tex. 1932). Citing *Missouri*, we noted that "[n]o act of the Legislature is operative as notice until it becomes a law." *Id.* But the issue in that case was when the statute became operative. *Popham* is not a retroactivity case and our reference to "notice" had nothing to do with the question of whether a party receives sufficient notice that the law is about to change. Likewise, in *Norton v. Kleberg County*, our only concern was "determining when an Act goes into effect as law." 231 S.W.2d 716, 718 (Tex. 1950). In short, the cases on which Survitec relies to support its claim that it had no notice that the Act could alter the consequences of Survitec's contract termination do not address the concerns that animate our constitutional prohibition against retroactive laws.

In contrast, our retroactivity cases have considered the period of time between a statute's enactment and effective date in weighing the degree of notice afforded and a statute's impairment of a party's rights. *See Likes*, 962 S.W.2d at 502 (holding an amendment to the Tort Claims Act was not unconstitutionally retroactive and noting the plaintiff had "more than two months from the time the change was made until the [amendment] became effective"); *Union Carbide*, 438 S.W.3d at 58 (describing the period between a statute's enactment and effective date as a "grace period for suits to be filed under the law as it previously existed"). These constitutionally required grace periods are designed "to give notice" so the public can adjust to the new law. *Halbert*, 34 S.W. at

14

639 (discussing TEX. CONST. art. III, § 39). Survitec's contention that enactment of a statute does not provide notice of an upcoming change in the law flies in the face of these precedents, and we reject it.

Under these facts, we conclude that the Act's application did not retroactively disrupt or impair any reasonable settled expectation of Survitec. We thus conclude the application of the Act to Survitec's termination of the agreement is not unconstitutionally retroactive. *See Robinson*, 335 S.W.3d at 145; *A.V.*, 113 S.W.3d at 361.

## IV.   Conclusion

Survitec had no reasonable settled expectation that it could continue to operate under its open-ended, at-will agreement in perpetuity. And Survitec had sufficient time between the Act's enactment and effective date to take whatever steps it thought necessary to avoid the Act's effects. Survitec could have ordered its affairs to avoid or defer the Act's application to its contractual relationship but instead chose to continue operating under its agreement until the Act took effect. For these reasons, we conclude that application of the Act in this case does not violate the constitutional prohibition against retroactive laws in Article I, Section 16. We answer the certified question "no."

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 3, 2022

15