# Supreme Court of Texas

No. 23-0629

State of Texas; Ken Paxton, in his official capacity as Attorney General of Texas; Texas Medical Board; and Stephen Brint Carlton, in his official capacity as Executive Director of the Texas Medical Board,

*Appellants*,

v.

Amanda Zurawski; Lauren Miller; Lauren Hall; Anna Zargarian; Ashley Brandt; Kylie Beaton; Jessica Bernardo; Samantha Casiano; Austin Dennard, D.O.; Taylor Edwards; Kiersten Hogan; Lauren Van Vleet; Elizabeth Weller; Damla Karsan, M.D., on behalf of herself and her patients; and Judy Levison, M.D., M.P.H., on behalf of herself and her patients,

*Appellees*

On Direct Appeal from the
353rd District Court, Travis County, Texas

JUSTICE BUSBY, joined by Justice Lehrmann, concurring.

In ratifying our present Constitution, the people of Texas granted their elected Senators and Representatives all "Legislative power of this State." TEX. CONST. art. III, § 1. This grant includes the power to limit

abortion, which was already a state criminal offense at the time of ratification.[1]

Using this power to limit and penalize abortion affects the unalienable rights of mothers and their unborn children to life and the unalienable rights of physicians and third parties to liberty from criminal confinement.[2] Accordingly, the Constitution also imposes a solemn duty on Legislatures that enact abortion laws, courts that interpret them, and executive branch agencies charged with employing their expertise to elaborate and enforce them: to speak "clearly"[3] and "in explicit terms"[4] so that any "depriv[ation] of life [or] liberty" will comply with the "due course of the law of the land." TEX. CONST. art. I, § 19.[5] As we have long recognized, "it would be inexcusable for a government to . . . punish its citizens for an infraction of a law which in its terms could not be understood by them." *State v. Int'l & G.N. Ry.*, 179 S.W. 867, 868 (Tex. 1915).

---

[1] *See* Act approved Feb. 9, 1854, 5th Leg., R.S., ch. 49, § 1, 1854 Tex. Gen. Laws 1502; TEX. PENAL CODE arts. 531-36 (1856); Act approved Feb. 12, 1858, 7th Leg., R.S., ch. 7, 1858 Tex. Gen. Laws 1044.

[2] THE DECLARATION OF INDEPENDENCE, para. 2 (U.S. 1776) ("We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.").

[3] *Houston, E. & W. Tex. Ry. v. Campbell*, 45 S.W. 2, 4 (Tex. 1898).

[4] *Mo., Kan. & Tex. Ry. v. State*, 100 S.W. 766, 767 (Tex. 1907).

[5] *See Tex. Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 461 (Tex. 1997) (explaining that law is valid exercise of legislative power when it is "justified by a rational legislative purpose and does not violate a specific constitutional provision").

But courts asked to carry out this high duty in a particular case cannot substitute their own views of wise public policy for the words chosen by the Legislature. I agree that the trial court's injunction does just that, and I therefore join the Court's opinion. Nor can courts decide questions not presented by the parties in the case before them. *See, e.g.*, *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020).[6] Because this case does not provide the Court with an opportunity to settle all uncertainties that those affected by Texas abortion laws may encounter, I also write to make clear what the Court does not decide today.

**I**

Certain classes of statutes "must be couched in such explicit terms that the party upon whom the statute is to operate may, with reasonable certainty, ascertain what the statute requires to be done and when it must be done." *In re Hecht*, 213 S.W.3d 547, 572 (Tex. Spec. Ct. Rev. 2006) (citing *Mo., Kan. & Tex. Ry. v. State*, 100 S.W. 766, 767 (Tex. 1907)). Two distinct doctrines work together to hold the Legislature to its duty to speak clearly and specifically when its actions implicate unalienable rights: vagueness and the rule of strict construction of penal statutes.

---

[6] This limitation does not apply to the Texas Medical Board, which we explained in *In re State* has the authority and expertise to issue regulations addressing "any confusion that currently prevails" in this sensitive area of medical judgment. 682 S.W.3d 890, 894 & n.5 (Tex. 2023). But instead of fulfilling its own obligation to speak clearly and specifically, the Board has proposed a regulation that does nothing more than restate the relevant statutes. 49 Tex. Reg. 2164, 2164-65 (2024) (to be codified at 22 TEX. ADMIN. CODE §§ 165.7-165.9) (proposed Mar. 25, 2024) (Tex. Med. Bd.).

3

Vagueness, the broader and blunter of the two doctrines, recognizes that a statute violates constitutional due-course rights and is therefore void if it "fails to give fair notice of what conduct may be punished, forcing people to guess at the statute's meaning, . . . [and] invites arbitrary and discriminatory enforcement by failing to establish guidelines for those charged with enforcing the law." *Comm'n for Law. Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998) (internal citations and quotation marks omitted); *see also Welch v. United States*, 578 U.S. 120, 124 (2016). Put another way, "[w]hen persons of common intelligence are compelled to guess a law's meaning and applicability, the law violates due process and is invalid." *King St. Patriots v. Tex. Democratic Party*, 521 S.W.3d 729, 743-44 (Tex. 2017).[7]

Additionally, the "vagueness doctrine requires different levels of clarity depending on the nature of the law in question. Courts demand less precision of statutes that impose only civil penalties than of criminal statutes because 'their consequences are less severe'"; but "when the statute's language . . . threatens to inhibit the exercise of constitutional rights, a stricter vagueness standard applies." *Benton*, 980 S.W.2d at 437-38. And although a few vague applications will not result in a statute being void for vagueness, a "vague provision is [not]

---

[7] Given the Court's reference to the doctrine of constitutional avoidance, it is important to recognize that using this doctrine to rewrite a vague statute is improper. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 n.3 (2010) (chiding dissent for employing constitutional avoidance to assign different meaning to defined statutory term); *Skilling v. United States*, 561 U.S. 358, 423 (2010) (Scalia, J., concurring in part) ("I do not believe we have the power, in order to uphold an enactment, to rewrite it."). Instead, as I discuss next, the doctrine applies to ambiguous penal statutes—that is, statutes with more than one reasonable meaning—in the form of a rule of strict construction.

constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson v. United States*, 576 U.S. 591, 602 (2015); *see also United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963) ("[S]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

The rule of strict construction of penal statutes, for its part, "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008); *see also United States v. Hoang*, 636 F.3d 677, 682 (5th Cir. 2011). In applying this doctrine, which is called the rule of lenity in the criminal context, this Court has "consistently held that penal statutes should be strictly construed." *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006) (citing *Brown v. De La Cruz*, 156 S.W.3d 560, 565 (Tex. 2004)); *see* TEX. GOV'T CODE § 311.035(b). Additionally, it is well-established "that the more severe the penalty, and the more disastrous the consequence to the person subjected to the provisions of the statute, the more rigid will be the construction of its provisions in favor of such person and against the enforcement of such law." *Mo., Kan. & Tex. Ry.*, 100 S.W. at 767.

## II

Although respondents call the Human Life Protection Act confusing, they do not argue that it is void for vagueness or that its application to a particular situation would violate the rule of strict construction. But because the Court partially construes the Act to explain why the trial court's injunction is improper, we must keep in

5

mind the Legislature's obligation—and our own—to speak clearly and specifically lest we unintentionally resolve an ambiguity in the statutory language or contribute to confusion where no ambiguity exists.

Texas law provides certain exceptions to the prohibition against knowingly performing an abortion. To qualify for the Act's exception at issue here, it must be shown (among other things) that, "in the exercise of reasonable medical judgment, the pregnant female on whom the abortion is performed, induced, or attempted has a life-threatening physical condition aggravated by, caused by, or arising from a pregnancy that places the female at risk of death or poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed or induced." TEX. HEALTH & SAFETY CODE § 170A.002(b)(2).[8]

At first glance, respondents' expressed confusion about this exception is understandable. For example, doesn't a life-threatening physical condition by its very nature place the mother at risk of death and pose a serious risk of substantial impairment of a major bodily function—indeed of all bodily functions? If so, why did the Legislature bother to include the second part of the statute talking about risks?

---

[8] Some of the other statutory exceptions take the form of exclusions from the definition of abortion. *See* TEX. HEALTH & SAFETY CODE § 245.002(1). One such exception excludes acts done "with the intent to . . . save the life or preserve the health of an unborn child." *Id.* § 245.002(1)(A). The Court notes that this exclusion allows a doctor to treat an unborn child with a life-limiting condition in utero. *Ante* at 27-28 & n.56. But the Court correctly does not suggest any view regarding how the exclusion might apply in a multiple-pregnancy situation such as that of Ashley Brandt—an issue the trial court did not specifically address. As the Court observes, Ms. Brandt sought to abort one unborn child with an invariably fatal fetal condition so that her other unborn child could survive. *Ante* at 7.

6

Relatedly, does the reference to a condition that "poses a serious risk of substantial impairment of a major bodily function" do any independent work in defining when an abortion is permitted, or is it merely surplusage given the requirement that the condition be "life-threatening"?

Closer study reveals that, as the Court explains, determining whether an abortion is permitted under this statutory exception has two steps. *First*, the mother must have one or more physical conditions caused by or arising from her pregnancy or pre-existing physical conditions aggravated by her pregnancy, and at least one of those conditions must have the potential to kill her—though death need not be imminent. *Second*, performing or inducing an abortion must mitigate either the mother's risk of death or a serious risk of substantial impairment of one of her major bodily functions posed by a condition that satisfies the first step.

The steps differ in that the first measures the impact of pregnancy on any physical conditions the mother has or develops, while the second assesses whether an abortion will affect at least one of those conditions by mitigating at least one of the specified risks it poses. Thus, for example, the exception applies if (1) pregnancy aggravates a mother's pre-existing physical condition to the point that the condition becomes life-threatening, and (2) an abortion would mitigate a serious risk that the condition would substantially impair a major bodily function—even if it would not also mitigate the risk of death.[9]

_____

[9] As this example shows, the Court's statements that Texas law permits a "life-saving abortion" are correct but incomplete. More precisely, Texas law

7

Both steps are determined under the objective standard of reasonable medical judgment, which is a judgment "made by a reasonably prudent physician, knowledgeable about a case and the treatment possibilities for the medical conditions involved." *Id.* § 170A.001(4). That standard is neither novel nor unique to the abortion context. Rather, it echoes the familiar standard of care that applies to all common-law negligence claims alleging medical malpractice.[10]

The Court rightly goes no further because the parties have not briefed any other disagreements regarding the statute's meaning, nor is addressing any other potential ambiguities necessary to decide this case. For example, the Court's opinion and the concurrences should not be read to decide the extent to which an abortion must avert or mitigate a risk of death or of impairment of a major bodily function for the exception to apply.[11] Nor should any of the opinions be understood to express a view regarding how principles of vagueness or lenity would

---

permits an abortion only in response to certain life-threatening conditions and when the abortion would address certain risks.

[10] *See, e.g.*, *Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019) ("In a medical malpractice negligence case, the standard of care is what a doctor of ordinary prudence in that particular field would or would not have done under the circumstances."); RESTATEMENT (THIRD) OF TORTS: MEDICAL MALPRACTICE § 5(a) (AM. L. INST., Tentative Draft No. 2, 2024) (defining "[t]he standard of reasonable medical care" for negligence claims).

[11] The statute does not address this question directly, but the word "unless" arguably suggests that at least some mitigation of the risk is required. The words "substantial" and "serious"—which the statute uses with reference to a risk of impairment of a major bodily function—may also shed light on the extent to which an abortion must address a given risk. And the objective standard of "reasonable medical judgment" may affect how courts review any assessment of risk mitigation.

8

apply to "any confusion that currently prevails." *In re State*, 682 S.W.3d 890, 894 (Tex. 2023).[12]

With these observations, I join the opinion of the Court.

_____
J. Brett Busby
Justice

**OPINION FILED:** May 31, 2024

---

[12] Courts have confronted vagueness challenges to several varieties of state statutory exceptions permitting abortion, but they have had few occasions to decide whether any ambiguity exists in such exceptions that should be construed in favor of lenity. *Cf. United States v. Vuitch*, 402 U.S. 62, 71 (1971) (holding exception for abortions "necessary for the preservation of the mother's life or health" not vague); *Isaacson v. Brnovich*, 563 F. Supp. 3d 1024, 1034-35 (D. Ariz. 2021) (holding exception for "genetic abnormality of the child" vague), *cert. granted before judgment, order vacated*, 142 S. Ct. 2893 (2022); *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 806 F. Supp. 2d 942, 960 (W.D. Tex. 2011) (holding definition of "medical emergency" for purposes of exception not vague), *rev'd on other grounds*, 667 F.3d 570 (5th Cir. 2012); *Jane L. v. Bangerter*, 809 F. Supp. 865, 878 (D. Utah 1992) (holding exception for "serious medical emergency" not vague), *rev'd on other grounds*, 61 F.3d 1493 (10th Cir. 1995), *judgment rev'd sub nom. Leavitt v. Jane L.*, 518 U.S. 137 (1996).

9